UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In Re "A Million Little Pieces" Litigation | : : : | MDL Docket No. 1771 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | : : : : | |

**"A MILLION LITTLE PIECES" PLAINTIFFS'
GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
<u>CONSOLIDATION AND APPOINTMENT OF CO-INTERIM CLASS COUNSEL.</u>**

Plaintiffs Marcia Vedral, Michele Snow, Diane Marolda, Sara Brackenrich, Jimmy Floyd, Jill Giles, Pilar More, Stuart Oswald, Shera Paglinawan, and Ann Marie Strack (hereinafter "AMLP Plaintiffs' Group," "Movant" or collectively "Plaintiffs") by and through their counsel, hereby submits this memorandum of law in support of its motion to consolidate for all purposes the related actions in this MDL proceeding pursuant to F.R.C.P. 42(a); and motion to appoint Brodsky & Smith, LLC and Larry D. Drury, Ltd. to serve as Co-Interim Class Counsel pursuant to F.R.C.P. 23(g) as follows:[1]

**I.      INTRODUCTION**

The Multi-District Litigation pending before this Court, and each of the related cases therein, involve the same factual circumstances, involve the same legal theories, allege similar, if not the same, causes of actions and mostly all involve similar, if not the same, Defendants. As such these actions should be consolidated for all purposes pursuant to F.R.C.P. 42(a).

---

[1] Out of the twelve coordinated actions in this MDL proceeding, only plaintiffs in two California actions (Plaintiff Sara Rubenstein, represented by Mitchell Kalcheim of Kalcheim & Salah and Co-Plaintiffs Jean Taylor and Garret Haustein, represented by Christopher Taylor of Gancedo & Nieves, LLP) are not in support of this motion.

In addition, pursuant to this Court's September 13, 2006 ruling, the AMLP Plaintiffs' Group moves for the appointment of Brodsky & Smith, LLC and Larry D. Drury, Ltd. as Co-Interim Class Counsel. The Proposed Co-Interim Class Counsel should be appointed as they have shown, *inter alia,* the willingness and ability to 1) coordinate with several counsel, 2) litigate and attend the MDL proceeding, 3) engage in numerous lengthy sessions of settlement negotiations in person and on the telephone with Defendants over a three month period which have culminated in a memorandum of understanding to which 10 of the 12 plaintiffs in these coordinated proceedings have approved pending confirmatory discovery; and 4) negotiate lengthy settlement documents that are close to being finalized which will be included in a motion for preliminary approval after confirmatory discovery is complete. Moreover, the proposed Co-Interim Class Counsel have been and continue to be supported by Liaison Counsel for the Class and the other seven Plaintiffs herein. They also have significant experience in Class and Complex Litigation and should be appointed.

## II.     FACTUAL BACKGROUND

The book "*A Million Little Pieces*" was written by Defendant Frey and published by Defendant Random House in 2003. The book was labeled by the Defendants as a memoir and placed in non-fiction book sections across the country. This label informs the reader that the book recounts events that are true and that, indeed, took place, as opposed to a fabricated story or plot. In September 2005, the Book was chosen as a selection by Oprah Winfrey for her world renowned Oprah Winfrey Book Club. More than two million copies were then sold.

On January 8, 2006, there was a report by *The Smoking Gun*, an investigative Web site, that there were multiple discrepancies between defendant Frey's life and his account of his life in the Book. Among the site's findings, was that Defendant Frey had spent only a few hours in jail, not nearly three months about which he had written. This revelation called into question other "facts" set forth in the Book and started a chain reaction of accusations regarding what could be believed in this so-called work of "non-fiction."

In fact, on January 11, 2006, defendant Frey appeared on CNN's *Larry King Live* and defended its overall message. "I still stand by my book. I still stand by the fact that it's my story. It's a truthful retelling of the story," he claimed. However, on January 26, 2006, Defendant Frey admitted on the nationally televised *Oprah Winfrey Show* that "I made a mistake," adding that he had developed a tough-guy image of himself as a "coping mechanism" to help address his alcohol and drug addiction. Defendant Frey further admitted that in addition to exaggerating the amount of time he had spent in jail, he had lied about how his girlfriend had died; about the details of a foray outside a rehabilitation center; and about his claim that he had received a root canal without anesthesia because the center prohibited the use of Novocaine.

Significantly, Defendants admitted that "neither she [Defendant representative Nan A. Talese] nor anyone at Doubleday had investigated the accuracy of Mr. Frey's book." Ms. Talese stated that "the company first learned that parts of the book had been made up when The Smoking Gun published its report, nearly two years after the memoir was first published."

III.    **PROCEDURAL BACKGROUND**

The first three lawsuits were filed in response to the investigative reporting website *Smoking Gun* accusations between January 12 and 13, 2006. After the truth was revealed to the public by Defendant Frey on January 26, 2006, ten additional lawsuits were filed across the country. Many were filed in state Court but these state court actions were ultimately removed to federal court by the Defendants. Defendants thereafter filed a motion to transfer all of the cases to a single District Court. On or about June 14, 2006, the Judicial Panel for Multi-District Litigation transferred all of the cases to this Court for "coordinated or consolidated pre-trial proceedings." *See* J.P.M.L. Order attached to the Declaration of Evan J. Smith, Esquire (hereinafter "Smith" Declaration) as Exhibit "A."

In response to Plaintiff Snow's counsel's June 26, 2006 request for a status conference, the Court held a status conference on September 13, 2006. At this hearing, this Court appointed Liaison Counsel and directed the parties to file motions for appointment of Co-Interim Class Counsel no later than September 22, 2006.

IV    **LEGAL ARGUMENT**

   A.    **Consolidation of All Related Actions is Appropriate.**

Rule 42(a) of the Federal Rules of Civil Procedure provides:

(a) Consolidation. When actions involving a common question of law or fact are pending before the Court, it may Order a joint hearing or trial of any or all of the matters in issue in the actions; it may Order all the actions consolidated; and it may make such Orders concerning proceeding therein as may tend to avoid unnecessary costs or delay.

Consolidation pursuant to Rule 42(a) is warranted because the actions filed against Defendants involve common questions of both law and fact. Rule 42(a) gives the district court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice.

4

*See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990).

Each and every one of the twelve putative class actions in this MDL proceeding arises out of Defendants' scheme to perpetrate a fraud on the public in the writing and publication of "*A Million Little Pieces*" as a memoir when, in fact, it was fiction. The proposed class consists of all persons who purchased "A Million Little Pieces" during a certain time period. In addition, all of the complaints allege, *inter alia*, the same theories of liability and causes of action in the nature of consumer fraud, fraud, and/or negligent misrepresentation.

In fact, the J.P.M.L. opined that these actions "involve common questions of fact" and all share similar allegations and the same relief from the same causes of action. *See* Smith Declaration at Exhibit "A." As all complaints involve common questions of law and fact, are clearly related, and have been coordinated by the MDL panel, all of these complaints should be consolidated in the interests of judicial efficiency and in order to avoid any unnecessary costs or delay. F.R.C.P. 42(a). Accordingly, consolidation of all related actions is appropriate.

### B. Standard for the Appointment of Co-Interim Class Counsel.

"In multi-party, multi-case litigation, the district court's success is largely dependent on its ability to uncomplicate matters." *In re Recticel Foam Corp.*, F2d 1000, 1004 (1st Cir. 1988). Accordingly, Fed.R.Civ.P.23(g)(2)(A) authorizes the Court to "designate interim class counsel to act on behalf of the putative class before determining whether to certify the action as a class action." See Fed.R.Civ.P.23(g) Advisory Committee Notes (2003); see also, *In re Delphi ERISA Litig.,* 230 F.R.D. 496, 498 (E.D. Mich. 2005). Interim class counsel are particularly appropriate in situations such as this,

where there are overlapping, duplicative, or competing class suits pending before a court. *Donaldson v. Pharmacia Pension Plan*, 2006 U.S. Dist. LEXIS 28607, 2-3 (D. Ill. 2006).

Attorneys appointed to serve as class counsel must fairly and adequately represent the interest of the class. Fed.R.Civ.P.23(g)(1)(B); *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004).[2] As such, it is the duty of the Court to appoint interim lead and liaison counsel who are fully capable and qualified to represent all parties on their side fairly and adequately. *See* Manual for Complex Litigation (Fourth) § 10.221 (2004); *see also Coleman v. General Motors Acceptance Corp.,* 220 F.R.D. at 100 ("the primary responsibility of the class counsel, resulting from an appointment as such, is to represent the best interests of the class."); *In re Goodyear Tire & Rubber Co. ERISA Litig.,* 2004 U.S. Dist. LEXIS 26706, at *13 (N.D. Ohio Apr. 22, 2004) (order appointing lead counsel and noting that the designated counsel must be "qualified and responsible…[and must] fairly and adequately represent all of the parties on their side").

In considering the appointment of class counsel under Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court must evaluate the following factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. F.R.C.P. 23(g)(1)(C)(i); *see also*

---

[2] As the Committee Notes to the 2003 amendments to Rule 23 point out, designation of interim class counsel is appropriate because: [I]t will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(C)(1) recognizes that some discovery is often necessary for that determination. It may also be important to make or respond to motions before certification…Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the class certification decision is made.

6

*Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783, 792 (D. Mass.2004) (designating law firms as co-lead counsel because "[i]t is clear that these firms have extensive experience in cases such as this and are well situated to pursue this action on behalf of the class").

Furthermore, a court *may* consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorneys fees and nontaxable costs; and make further orders in connection with the appointment. F.R.C.P. 23(g)(1)(C)(ii)-(iv); *see Hill v. The Tribune Co.,* No. 05 C 2602, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005).

### C. The Court Should Appoint The Proposed Co-Interim Class Counsel As They Satisfy the Requirements Of Rule 23(g).

As courts evaluating the adequacy of representation requirement at class certification have repeatedly held, a class is fairly and adequately represented where counsel is qualified, experienced, and generally able to conduct the litigation on its behalf. *See e.g. Cavin v. Home Loan Ctr., Inc.*, No. 05 C 4987, 2006 U.S. Dist. LEXIS 31308 (N.D. Ill. May 10, 2006). As set forth in the proposed Co-Interim Class Counsel's respective firm profiles, each of the proposed firms have served as class counsel in numerous complicated cases dealing with breach of contract, securities fraud, consumer fraud and injunctive relief throughout the country.

Proposed Co-Interim Class Counsel are ready, willing and able to commit the resources necessary to litigate these cases vigorously. Indeed, Proposed Co-Interim Class Counsel have already committed significant time and efforts to the research and litigation

7

of these cases, and are prepared to commit considerable financial resources to the successful prosecution of these cases.

In fact, Proposed Co-Interim Class Counsel have already:

1. Filed detailed complaints. *See* Exhibit B and C to Smith Declaration.

2. Served/obtained waivers of service from the Defendants *Id.* at Exhibit D.

3. Attempted to coordinate with all Plaintiffs' counsel to put forward a unified and cohesive leadership structure *Id*. *See also*, Declaration of Scott Frost, Esquire.

4. Submitted individual settlement proposals before the instant Plaintiffs' Group was established. *Id.*

5. Filed detailed memorandum of law in the MDL proceeding. *Id*. at Exhibits E, and F.

6. Attended and argued before the MDL panel in Kansas City, Kansas. *Id.*

7. Coordinated 10 of the 12 Plaintiffs to put forward a cohesive leadership structure to engage Defendants in settlement discussions. *Id.*

8. Attended numerous and lengthy settlement negotiation sessions in person in Illinois and via telephone over a four month period. *Id.*

9. Negotiated and agreed to a Memorandum of Understanding on behalf of 10 of the 12 Plaintiffs for a proposed nationwide class settlement. *Id.*

10. Negotiated and are in the final stages of finalizing the settlement documents and motion for preliminary approval papers of this settlement on behalf of 10 of the 12 Plaintiffs. *Id.*

11. Negotiated the ability to obtain confirmatory discovery before the final settlement papers are approved. *Id.*

12. Led, updated, conferenced, discussed and sought approval with and from all Plaintiffs in this cohesive Plaintiffs' team before finalizing any Memorandum of Understanding during this four month process. *See Frost Declaration.*

13. Requested a status conference after the MDL Panel Ordered these coordinated proceedings to this Court in order to obtain a schedule for the prosecution of this litigation. *See* Smith Declaration at Exhibit G.

    14.     Attended the September 13, 2006 conference.

    15.     Filed the instant Motion to consolidate the Related Actions and appoint Co-Interim Class Counsel.

Specifically, Plaintiffs' counsel began to organize on or about April, 2006. Plaintiffs' counsel were personally contacted by telephone and/or emails by Larry D. Drury, Evan Smith and/or Scott Frost to organize and be part of the coordinated Plaintiffs' group.[3] An initial meeting with Movant' counsel and Defendants' counsel was in April, 2006 at Sidley, Austin, Brown & Wood, LLP in Chicago, Illinois. There were numerous telephone calls and emails discussing the meeting, facts and law and it was agreed between Plaintiffs' counsel (11 of the 12 firms, including Gancedo & Nieves) at that time that Larry D. Drury and Evan Smith would proceed to speak on behalf of Plaintiffs' counsel.

Larry D. Drury and Evan Smith were the contact attorneys with Plaintiffs' counsel and the Defendants. They continually advised Plaintiffs' counsel of the status of the case and discussions with the Defendants. In fact, Larry D. Drury met with the Defendants in Chicago, Illinois and Evan Smith participated by telephone in over ten meetings during the ongoing four month settlement discussions, while at the same time keeping all Plaintiffs' Counsel in the settlement group advised thereof. Multiple drafts of proposed settlement terms were exchanged between Larry D. Drury, Evan Smith and the Defendants and were forwarded to Plaintiffs' counsel for comment. This continued for at least four months when the MOU was finally executed by undersigned Plaintiffs' counsel

---

[3] Indeed, Plaintiff Sara Rubenstein was contacted by telephone calls but no return call was ever made. *See* Frost Declaration. In addition, Plaintiffs Taylor and Hauenstein were part of the instant group for a long period of time until they decided to withdraw.

9

herein. The Court should note that each of the aforesaid two firms were invited to join the group from day one.

Subsequent to the MOU being signed, Larry D. Drury and Evan Smith negotiated, received and revised a proposed settlement agreement, notice to the class, preliminary approval orders and final judgment orders. These documents were provided to all Plaintiffs' counsel for review and comment. Larry D. Drury and Evan Smith also had numerous conversations and exchange of emails concerning the hearing on September 13, 2006 with Plaintiffs' counsel. Similarly, Larry D. Drury and Evan Smith reviewed and discussed the nature of the confirmatory discovery provided by the Defendants and a protective order regarding same. A summary of the September 13, 2006 hearing was provided to all Plaintiffs' counsel subsequent to the hearing. Currently, Larry D. Drury and Evan Smith continue to negotiate with the Defendants concerning the preliminary approval of the settlement and confirmatory discovery.

In light of the above factual backdrop, the Million Little Pieces Plaintiffs' counsel have selected the law firms of Brodsky & Smith, LLC and Larry D. Drury, Ltd. to serve as Co-Interim Class Counsel in this litigation. Both Brodsky & Smith, LLC and Larry D. Drury, Ltd. possess extensive experience in the area of complex commercial litigation and class action matters. Both firms have served as Lead or Co-Lead counsel in various class action and complex litigation suits across the country. *See* firm profiles attached as Exhibits H and I, respectively, to Smith Declaration; *see also* Brodsky & Snmith, LLC's website at www.brodsky-smith.com.

In sum, because Proposed Co-Interim Class Counsel satisfy all of the requirements for Rule 23(g), and because appointment of co-interim class counsel is

10

necessary and appropriate to the administration of these complex class action cases, the Million Little Pieces Group's Motion should be granted.

## IV. CONCLUSION

For the foregoing reasons, "A Million Little Pieces" Plaintiffs' Group respectfully requests that Interim Counsel be appointed and the attached Order be entered.

Dated: September 22, 2006                                   Respectfully submitted,

**LAW OFFICES OF THOMAS M. MULLANEY**

By: */s/ Thomas M. Mullaney (TM4274)*
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY 10017
Telephone:    (212) 223-0800
Facsimile:    (212) 661-9860

*Liaison Counsel for Class and*
**Attorneys for Plaintiff Diane Marolda**

**BRODSKY & SMITH, LLC**
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626

*[Proposed] Co-Interim Class Counsel*
**and Attorneys for Plaintiff Michele Snow**

Larry D. Drury, Esquire
Larry D. Drury, Ltd.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:    (312) 346-7950
Facsimile:    (312) 346-5777

*[Proposed] Co-Interim Class Counsel*
**and Attorneys for Plaintiff Marcia Vedral**

[Additional Counsel Appear on Next Page]

11

John H. Alexander, Esquire
John H. Alexander & Associates, LLC
100 West Monroe, 21st Floor
Chicago, IL 60602
**Attorney for Plaintiff Marcia Vedral**

Alan S. Ripka, Esquire
Napoli Berm Ripka
115 Broadway
New York, NY 10006
**Attorney for Plaintiff Jimmy Floyd**

Thomas E. Pakenas, Esquire
Dale and Pakenas
641 Lake Street, Suite 400
Chicago, Il 60661
**Attorney for Plaintiff Pilar More**

Thomas A. Zimmerman, Jr., Esquire
Zimmerman and Associates, P.C.
100 West Monroe, Suite 1300
Chicago, IL 60603
**Attorney for Plaintiff Ann Marie Strack**

Michael David Myers, Esquire
Myers & Company, P.L.L.C.
1809 Seventh Avenue, Suite 700
Seattle, WA 98101
**Attorney for Plaintiffs Shera Paglinawan and Wendy Shaw**

Scott C. Frost, Esquire
Statman, Harris, Siegel & Eyrich, LLC
333 West Wacker Drive, Suite 1710
Chicago, IL 60606
**Attorney for Plaintiff Jill Giles**

Brian C. Witter, Esquire
DiTommaso Lubin
17 West 220, 22nd Street
Oakbrook Terrace, IL 60181
**Attorneys for Plaintiff Sara Brackenrich**