# EXHIBIT "B"

Dockets.Justia.com

06 CV 669

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE SNOW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DOUBLEDAY, A DIVISION OF RANDOM HOUSE, INC.; BANTAM DOUBLEDAY DELL PUBLISHING GROUP; RANDOM HOUSE, INC.; ANCHOR BOOKS, A DIVISION OF RANDOM HOUSE, INC.; JAMES FREY<br><br>Defendants. | Case No. JAN 27 2006<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of false and misleading advertising and promotion by Defendants of its purported "non-fiction" book, authored by James Frey, "*A Million Little Pieces* in an effort to stimulate it sales thereof. Plaintiff, on behalf of herself and all other similarly situated individuals, asserts violations of the New Jersey Consumer Fraud Act (NJSA 56:8-1, *et. seq.*) and a claim for unjust enrichment.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

3. This Court has supplemental jurisdiction over the pendant state law claims

asserted herein pursuant to 28 U.S.C. § 1367(a) over all other claims where, as here, they are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants conduct business in this District and substantially all of Defendants' wrongful conduct took place in this District. In addition, all but one foreign Defendant has a principal place of business here in this District.

## THE PARTIES

5. Plaintiff, Michele Snow, is an individual who purchased the book *A Million Little Pieces* in reliance upon Defendants' false and deceptive advertising prior to January 27, 2006.

6. Defendant James ("Jim") Frey is an individual who authored the book *A Million Little Pieces*.

7. Defendant Doubleday, a division of Random House, Inc. is a corporation. At all relevant times hereto it acted or failed to act by and through its' officers, directors, employees, and/or representatives. It has its principal place of business located at 1540 Broadway, 21st Floor, New York, NY 10036-4094.

8. Defendant Bantam Doubleday Dell Publishing Group is a corporation. In 1988, Doubleday became part of Bantam Doubleday Dell Publishing Group. At all relevant times hereto it acted or failed to act by and through its' officers, directors, employees, and/or representatives. It has its principal place of business located at 1540 Broadway, 21st Floor, New York, NY 10036-4094.

9. Defendant Random House, Inc. is a corporation who was acquired by Doubleday in 1998. It is a parent corporation of Doubleday. Doubleday is now known as Doubleday, a Division of Random House, Inc. At all relevant times hereto it acted or failed to act by and through its' officers, directors, employees, and/or representatives. It has its principal place of business located at 1540 Broadway, 21st Floor, New York, NY 10036-4094.

10. Defendant Anchor Books is a corporation. It is known as Anchor Books, a Division of Random House, Inc. At all relevant times hereto it acted or failed to act by and through its' officers, directors, employees, and/or representatives. It has its principal place of business located at 1540 Broadway, 21st Floor, New York, NY 10036-4094.

## FACTUAL BACKGROUND

11. "*A Million Little Pieces*" is a book that was written by Defendant Frey and published by all Defendants in 2003. The book was labeled by the Defendants as a non-fiction book. This label gives the reader the knowledge that the book is based upon true events, and not a fabricated story or plot.

12. In September 2005, "*A Million Little Pieces*" was chosen as a monthly selection by Oprah Winfrey for her world renowned Oprah Winfrey Book Club as the Book of the Month. More than two million copies were then sold.

13. As recently as January 8, 2006, there was a report by *The Smoking Gun*, an investigative Web site, that found multiple discrepancies between Defendant Frey's life and his account in the book. Among the site's findings were that Defendant Frey had spent only a few hours in jail, not nearly three months as he had written.

14. On January 11, 2006 Defendant Frey appeared on CNN's *Larry King*

3

*Live* and, while acknowledging that he had fabricated some parts of his account, defended its overall message. "I still stand by my book. I still stand by the fact that it's my story. It's a truthful retelling of the story," he said.

15. On January 26, 2006, Defendant Frey finally admitted on the nationally televised *Oprah Winfrey Show* that "I made a mistake," adding that he had developed a tough-guy image of himself as a "coping mechanism" to help address his alcohol and drug addiction.

16. Defendant Frey was confronted about his fabrications by Oprah Winfrey on her this January 26, 2006 nationally televised show. Eventually Defendant Frey admitted that in addition to exaggerating the amount of time he had spent in jail, he had lied about how his girlfriend had died; about the details of a foray outside a rehabilitation center; and about his claim that he had received a root canal without anesthesia because the center prohibited the use of Novocaine.

17. Defendant Frey even admitted that the reports from *The Smoking Gun* were accurate about the deception and lies in his alleged "non-fiction" book saying "I think most of what they [*The Smoking Gun*] wrote was pretty accurate, absolutely."

18. Even Defendants maintained the accuracy of the book despite the published reports of inaccuracies. Oprah Winfrey said that "her producers asked the publisher about the allegations, but that they were reassured the book was accurate."

19. In fact, Defendants publisher/representative Ms. Nan A. Talese admitted that "neither she nor anyone at Doubleday had investigated the accuracy of Mr. Frey's book." She explained that "the company first learned that parts of the book had been made up when The Smoking Gun published its report, nearly two years after the memoir

4

was first published." "An author brings his book in and says that it is true, it is accurate, it is his own," Ms. Talese said. "I thought, as a publisher, this is James's memory of the hell he went through and I believed it."

20. Defendants issued a statement on January 26, 2006, upon the admissions of Defendant Frey, that "we bear responsibility for what we publish, and apologize to the reading public for any unintentional confusion surrounding the publication of "*A Million Little Pieces*." They further admitted that they were going to stop publishing the book as it was prior to the admissions of Defendant Frey and were going to include an author's note and a publisher's note in all future publications. Defendants are also sending this note to all booksellers for inclusion in previously shipped copies of the book to be included when the books are sold in the future.

21. Nevertheless, in advertising and publishing a book labeled "non-fiction," a label that categorizes a book for the consumer, Defendants have a duty to verify and corroborate the accuracy of the book's contents and ensure that when advertising such facts, the advertisements are in fact true. Defendants intentionally, recklessly and/or negligently failed to do so.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class:

> All persons or entities in New Jersey who purchased the book *A million Little Pieces* from the date it was first published to January 26, 2007. Excluded from this Class are Defendants, its affiliates, employees, officers and directors, persons or entities which published the book *A Million Little Pieces*, and the Court.

23. Plaintiff reserves the right to amend this Class definition if discovery and further investigation shows that the Class should be expanded or otherwise modified.

24. The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are hundreds of thousands of purchasers of the book.

25. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

(a) Whether Defendants' advertisements and marketing of the book through various media outlets, including print materials, television advertising, point of sale material and internet, were false and misleading;

(b) Whether Defendants made false and/or misleading statements of fact to the Class and the public concerning the truth or falsity of the book;

(c) Whether Defendants knew, or was reckless in not knowing, that the book was a fiction and not a non-fiction book and such statements about the book were false and/or misleading;

(d) Whether Defendants have been unjustly enriched by its conduct;

(e) Whether Defendants' false and/or misleading statements about the book were likely to deceive the public;

(f) Whether, by the misconduct set forth in this Complaint, Defendants have engaged in unfair, deceptive or unlawful business practices with respect to the advertising, marketing and sale of the book;

(g) Whether, by its conduct, Defendant violated the NJCFA; and

(h) Whether, as a result of Defendants' misconduct, Plaintiff and the Class are entitled to compensatory, statutory, treble and/or punitive damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

26. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class and are subject to no unique defenses.

27. Plaintiff will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

28. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

    (a) It is economically impractical for members of the Class to prosecute individual actions;

    (b) The Class is readily definable;

    (c) Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    (d) A class action will enable claims to be handled in an orderly and expeditious manner. A class action will save time and expense and will ensure uniformity of decisions.

29. Plaintiffs do not anticipate any difficulty in the management of this litigation.

### FIRST CAUSE OF ACTION

**Violations of New Jersey Consumer Fraud Act (NJSA 56:8-1, *et. seq.*)**

30. Plaintiff Michele Snow re-alleges all of the above paragraphs as though they were more fully set forth herein at length.

31. Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

32. Defendant has engaged in unfair, unlawful, and fraudulent business practices as set forth above.

33. By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the New Jersey Consumer Fraud Act.

34. Defendant's acts and practices have deceived and/or are likely to deceive members of the consuming public.

35. Defendant's acts and practices are unlawful because they violate the New Jersey Consumer Fraud Act.

36. Plaintiff, on behalf of herself and on behalf of the Class, seeks an order of this Court awarding restitution, disgorgement, and all other relief allowed under said statute, plus interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

37. Plaintiffs re-alleges all of the above allegations as though they were more fully set forth herein at length.

38. By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiff and the Class. Plaintiff and the Class purchased the book that they would not have purchased but for the misrepresentations made by Defendant.

39. Plaintiff and the Class seek restitution from Defendant and seek an Order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from the sale of the book that would not have been received but for Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated pray for judgment against Defendant granting the following relief:

A. An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B. Restitution and disgorgement of all amounts obtained by Doubleday as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C. Compensatory, punitive and treble damages in an amount to be determined by the trier of fact and as permitted by law;

D. An order requiring Defendant to refund to Plaintiff and all members of the Class the funds paid for the falsely advertised book;

E. Reasonable attorneys' fees and the costs of prosecuting this action; and

F. Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: January 27, 2006

BRODSKY & SMITH, LLC

By: _____
Evan J. Smith, Esquire (ES3254)
240 Mineola Boulevard, First Floor
Mineola, NY 11501
516-741-4977
516-741-0626 (facsimile)

Attorneys for Plaintiff