## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE "A MILLION LITTLE PIECES"
LITIGATION

No. 06-md-1771

Hon. Richard J. Holwell

**AMLP PLAINTIFFS' GROUP'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,
CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

Dated: January 4, 2007

LAW OFFICES OF THOMAS M. MULLANEY
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY 10017
Telephone:　(212) 223-0800
Facsimile:　(212) 661-9860

*Liaison Counsel for Class and*
*Attorneys for Plaintiff Diane Marolda*

BRODSKY & SMITH, LLC
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:　(516) 741-4977
Facsimile:　(516) 741-0626
*[Proposed] Co-Interim Class Counsel*
*and Attorneys for Plaintiff Michele Snow*

Larry D. Drury, Esquire (admitted *pro hac vice*)
LARRY D. DRURY, LTD.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:　(312) 346-7950
Facsimile:　(312) 346-5777

*[Proposed] Co-Interim Class Counsel*
*and Attorneys for Plaintiff Marcia Vedral*

[Additional Counsel Appear on Signature Line]

Dockets.Justia.com

# TABLE OF CONTENTS

I.   INTRODUCTION…………………….……………………………..1

II.   FACTUAL BACKGROUND………………………………………..……1

    A.   **Factual Background**………………………………………………1

    B.   **Procedural Background**………………………………………..2

    C.   **Settlement Background**………………………………………..3

III.   THE PROPOSED SETTLEMENT……………………………………4

IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARILY APPROVAL…………………………6

    A.   The Court's Role and the Factors to be Considered in the Preliminary Approval of a Class Action Settlement……………………………6

    B.   **The Proposed Settlement Is The Result Of Arms' Length Negotiations**……………………………………………………8

    C.   **The Proposed Settlement Is Reasonable**………………………9

    D.   **The Settlement Class Meets The Standards for Certification Under Rule 23**……………………………………………….......13

        1.   **The Numerosity Requirement Is Satisfied**……………………14

        2.   **The Proposed Settlement Class Share Common Questions of Law and Fact, Satisfying Both the Commonality and Typicality Requirements**……………………………………………14

            a.   Commonality is satisfied……………………………………16

            b.   Typicality is satisfied……………………………....…………16

        3.   **The Settlement Class's Interests are Adequately Represented by the Class Representatives**……………………………………16

        4.   **Rule 23(b)(3) Is Satisfied Because The Settlement Class's Claims Involve Predominantly Common Issues and a Class Action is the Superior Means by Which to Adjudicate The Claim**……..................17

            a.   Common Legal and Factual Questions Predominate……………..18

b.   A Class Action is Superior to Other Means of Adjudicating
the Plaintiffs' Claims…………………………………………18

**E.     The Proposed Notice to Class Members is Adequate**……….……………..…20

**V.     CONCLUSION**………………………………………………………...……....22

## I.    INTRODUCTION

The "*A Million Little Pieces*" Plaintiffs' Group (hereinafter "Plaintiffs" or "AMLP

Plaintiffs") and the Defendants in these consolidated class actions have reached a proposed

settlement and the AMLP Plaintiffs now seek an Order from the Court: (1) granting preliminary

approval of the settlement; (2) conditionally certifying a class (the "Settlement Class"); and (3)

directing that notice of the settlement be given to the Settlement Class in the proposed form and

manner.  A true and correct copy of the proposed settlement agreement with related attachments

and proposed notice plan are attached as Exhibit "A" to the Declaration of Evan J. Smith,

Esquire in support of the instant motion (hereinafter "Smith Declaration").

## II.    FACTUAL BACKGROUND

### A.    <u>Factual Background</u>

This proceeding involves numerous separate class actions (collectively, "the AMLP

Actions") brought on behalf of persons who purchased the book "A Million Little Pieces" ("the

Book") by James Frey.  The plaintiffs in each action allege that they suffered damages as a result

of their reliance on alleged representations that the Book was a work of nonfiction.

Random House published the Book, which is based on Frey's experiences during a stay

at a drug rehabilitation center, in 2003.  The back cover indicates that the Book is

"memoir/literature."  Over the next two years, the Book gained critical success.  In 2005, the

Book was chosen as a featured selection of the Oprah Winfrey book club.

On January 8, 2006, the Smoking Gun, a investigative website, posted an article claiming

that several sections of Frey's book were "wholly fabricated or wildly embellished."  *See A*

*Million Little Lies*, THE SMOKING GUN (Jan. 8, 2006) (a true and correct copy is attached as

Exhibit "B" to the Smith Declaration).  Frey later commented on these claims in televised

appearances on "Larry King Live" (on January 11, 2006) and "*The Oprah Winfrey Show*" (on

January 26, 2006).  In his appearance on *The Oprah Winfrey Show*, Frey admitted that portions of the Book were embellished.  Around this same time, Random House published on its website and included in subsequent printings of the Book an "Author's Note" and a "Publisher's Note" acknowledging Frey's statements concerning the accuracy of items in the Book.

In the wake of both the Smoking Gun article and Frey's appearance on "*The Oprah Winfrey Show*," numerous putative class action lawsuits against Frey, Random House, and other defendants were filed around the United States.  All of these lawsuits focus on (1) the author's alleged embellishments in the Book; (2) the labeling of the Book as a "memoir"; and (3) various other ways in which the Book was advertised, publicized, and marketed.  Plaintiffs in the AMLP Actions allege similar legal theories, including common law and statutory claims of negligence, unjust enrichment, and consumer fraud.

**B.**   **Procedural Background**

The eleven currently pending class actions were filed in state and federal courts throughout the United States in January and February of 2006.  On February 21, 2006, defendants began removing the state actions to federal court, invoking federal court jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Random House subsequently filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate and transfer the AMLP Actions pursuant to 28 U.S.C. § 1407.  Each of the individual actions was stayed pending the JPML's decision.  On June 14, the JPML granted the motion, finding that the AMLP Actions "involve common questions of fact, and that centralization … will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" and transferring the AMLP Actions to this Court.  *See In re "A Million*

2

*Little Pieces" Litig.*, 435 F. Supp. 2d 1336, 1337, 1338 (J.P.M.L. 2006).  The initial pre-trial conference before the Court was held on September 13, 2006.

      **C.**      **Settlement Background**

      The proposed settlement results from substantial negotiations among the parties, spanning over five months and involving hundreds of phone calls and e-mails, and numerous meetings.  *See* Smith Declaration para. 2-10.  In March of 2006, proposed Interim Co-Counsel, Larry D. Drury and Evan J. Smith, worked to coordinate a group of plaintiffs' counsel to negotiate with counsel for defendants Random House and Frey ("Defendants").  *Id.*  At an initial meeting on April 20, 2006, a large group of plaintiffs' counsel, coordinated by Drury and Smith, met in Chicago with all of the defense counsel to discuss the potential for a resolution of the AMLP Actions.  *Id.*  After that initial group meeting, proposals were exchanged among the parties with the broad outline of a proposed settlement.  *Id.*  After the exchange of proposals, and their consideration by the wider group of plaintiffs' counsel, Drury and Smith participated in a series of negotiations with the Defendants' counsel, which included at least six in-person meetings in Chicago,[1] and dozens of phone conferences.  *Id.*  Drury and Smith kept other plaintiffs' counsel apprised of the developments in the settlement negotiations, and regularly received input from the wider plaintiffs' group on proposed responses to proposals submitted by Defendants.  *Id.*  These extensive negotiations ultimately resulted in the execution of a formal Memorandum of Understanding ("MOU") on July 26, 2006, which was reviewed and approved by eleven plaintiffs' counsel.  *Id.*  The MOU was then memorialized into a written settlement

---

[1] Drury met in person with defense counsel on the following dates: April 20, June 14, 22, 27, July 5, and 19 with Drury and defense counsel.  Smith participated in these meetings via telephone.

agreement.  The same eleven plaintiffs' counsel have signed the settlement agreement now before the court.

Working through Drury, Smith, and liaison counsel, Thomas M. Mullaney, plaintiffs have also secured substantial confirmatory discovery in connection with this settlement, which was a condition precedent in resolving this matter.  *Id.*  Indeed, Plaintiffs received and reviewed more than 2000 pages of materials and electronic documents regarding the Book, including sales numbers, the Book's rate of return, pricing information, and Frey's royalties.  *Id.*  Plaintiffs were also given copies of Random House's records regarding refund requests for the Book, as well as copies of other written comments regarding the Book that Random House received from consumers.

## III.   THE PROPOSED SETTLEMENT

The primary terms of the settlement contained in the Settlement Agreement (*see* Smith Declaration at Exhibit "A" for complete terms), are as follows:

First, the Settlement Agreement contemplates the certification of a nationwide Settlement Class.  The Settlement Class will consist of all persons who purchased the Book, in any format, on or before January 26, 2006, the date of Frey's widely-publicized appearance on "The Oprah Winfrey Show," during which Frey acknowledged that certain portions of the Book were embellished.

Second, Defendants have agreed to provide and make available to the settlement class the total amount of $2.35 million.  This settlement amount will be used to pay compensation to the class, notice and settlement costs, and any attorneys' fees and incentive awards.  Settlement Class members who believe they were misled by the marketing of the Book will be entitled to submit claims for an amount equal to a full refund of the purchase price.  (The claim form is

simple to complete and does not require Settlement Class members to return the Book.).  The precise amount that each class member will receive depends on the volume of claims.  If the volume of claims is not sufficient to exhaust the amount available to pay claims (the $2.35 million less fees and expenses), then claimants will receive a full refund of their purchase price.  If the settlement costs and full refunds would cause Defendants to pay more than $2.35 million, then Settlement Class members will receive their pro rata share of the amount available to pay claims.

The Defendants have also agreed to include a disclaimer in future Random House printings of the Book, indicating that not all portions of the Book are factually accurate.  (A true and correct copy of the disclaimer is attached to Smith Declaration as Exhibit "C").  This disclaimer has appeared on the Random House website, and has been included in the Book, since around the time of the January 26, 2006 Oprah Winfrey Show.   In exchange for this consideration, the Settlement Class will provide a broad release of claims, including any claims that were or could have been raised in the AMLP Actions that relate to the Book.

Third, the parties have agreed to an extensive notice program.  For those persons whose names and addresses are known, notice will be accomplished by first class mailed notice.  Because the names and addresses of most purchasers of the Book are not known to defendants, however, the parties have also agreed to a nationwide publication notice program.  The notice will be published in two publications, *Parade* and *USA Weekend*, which are inserted into 885 newspapers nationwide, covering every state.  The parties engaged Rust Consulting, a well-known class action settlement administrator, to assist in the design of the notice program, and to ensure that the notice program was designed to reach the unique group that purchased the Book.

## IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARILY APPROVAL

### A.    The Court's Role and the Factors to be Considered in the Preliminary Approval of a Class Action Settlement.

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed Settlement is a matter within the discretion of the district court.  *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  In addition, this discretion should be exercised in the context of a public policy which strongly favors the pretrial settlement of class action lawsuits.  *See, e.g., Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003).

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  The court may use wide discretion in determining the information that it wishes to consider at this preliminary stage.  This initial assessment can be made on the basis of information already known to the court.  *Manual for Complex Litigation, Third* at §30.41.  In determining whether preliminary approval of the Settlement is warranted, the sole issue before the Court is whether the Settlement is within the range of what could be found to be fair, adequate, and reasonable, so that notice should be given to the proposed Settlement Class, and a hearing scheduled to consider final approval of the Settlement.  If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing.  *See NASDAQ*, 176 F.R.D. at 102; *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the

6

proposed settlements"); *Prudential*, 163 F.R.D. at 210 ("At this stage of the proceeding, the

Court need only find that the proposed settlement fits 'within the range of possible approval'")

(citation omitted).

Granting preliminary approval of a settlement "is not tantamount to a finding that the

settlement is fair and reasonable." *In re Traffic Executive Assoc. E. R.R.*, 627 F.2d 631, 634 (2d

Cir. 1980). Instead, a court's preliminary approval constitutes a finding that there is enough

"probable cause" that the settlement is legitimate to justify notifying class members of the

settlement proposal and holding a full-blown fairness hearing. *Id.* Therefore, as long as

> the proposed settlement appears to be the product of serious,
> informed, non-collusive negotiations, has no obvious deficiencies,
> does not improperly grant preferential treatment to class
> representatives or segments of the class and falls within the range
> of possible approval, preliminary approval is granted.

*Nasdaq*, 176 F.R.D. at 102 (citing Manual for Complex Litigation § 30.41 (3d ed. 1995)).

Moreover, the opinion of experienced counsel supporting the settlement is entitled to

considerable weight in the Court's evaluation of the settlement. *In re Michael Milken & Assoc*.

*Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). *See also Reed v. General Motors Corp.*, 703

F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at

arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones

are buried.").

As set forth below, counsel for Plaintiffs who have signed the Settlement Agreement

("Settlement Class Counsel") have extensive experience in class action litigation, the counsel for

the parties negotiated the Settlement at arms' length and in good faith, and Settlement Class

Counsel and Proposed Co-Interim Class Counsel have determined that the proposed Settlement

is reasonable. In addition, the proposed Settlement Class meets the certification rules laid out

under Rule 23(a) and (b), and should be certified as a settlement-only class.  Finally, the

Proposed Notice adequately apprises the Settlement Class members of the proposed terms of the

settlement and satisfies both Rule 23(c)(2) and due process requirements.

### B.    The Proposed Settlement Is The Result Of Arms' Length Negotiations.

Where a settlement is the result of arms' length negotiations by experienced class

counsel, "[t]here is usually an initial presumption of fairness."  *See* 4 Herbert B. Newberg &

Alba Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002).  Such a presumption is appropriate

here.  First, the negotiations occurred between experienced counsel.  Plaintiffs' counsel from

nine of the pending AMLP Actions actively participated in the settlement negotiations.  Indeed,

the proposed Interim Co-Class Counsel who led the negotiations has been appointed Lead or Co-

Lead Counsel in various complex and/or class action litigation by state and federal courts across

the country.  *See AMLP Plaintiffs Group's Motion for Co-Interim Class Counsel* previously filed

in this action.  Moreover, the Settlement Class Counsel as a whole has vast experience in

complex and/or class litigation.  This combined experience provides the Settlement Class

Counsel with the ability to effectively represent the Class members' interests.  *See D'Amato*, 236

F.3d at 85 (not an abuse of discretion to find settlement procedurally fair where plaintiffs'

counsel was experienced in complex class actions).

Second, the Agreement was the product of extensive negotiations and took place between

attorneys with competing interests.  These attorneys met numerous times starting in April of

2006, and the terms of the Settlement Agreement were only agreed upon after several months of

hard fought negotiations.  *See* Section II(C), *supra.* and Smith Declaration para. 2-10 regarding

the arms-length negotiations leading to the settlement.

Third, Settlement Class Counsel have concluded that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settling Class. *See* Declarations of Larry D. Drury, Thomas M. Mullaney and Evan J. Smith, all filed contemporaneously herewith. During the settlement negotiations, counsel had adequate information regarding the strengths and weaknesses of Plaintiffs' case. Indeed, throughout the negotiations, the parties pressed their respective strengths. Plaintiffs also considered the weaknesses of their case, the risks posed by further litigation, the likely recovery at trial, and the risks and delays of the inevitable appeals that would follow a trial. In addition, Plaintiffs did not finally settle this Action against the Defendants until they performed additional confirmatory discovery (including the review of 2000 pages of documents), confirming the Defendants' representations during the settlement negotiations. *See* Smith Declaration at para. 2-10. As great weight is given to the recommendation of "counsel, who are most closely acquainted with the facts of the underlying case," this Court should defer to Settlement Counsel's determination that this Settlement meets the prerequisites for preliminary approval. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (citation omitted).

## C.    <u>The Proposed Settlement Is Reasonable.</u>

The propriety of settlement compensation is not determined by "a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness." *PaineWebber*, 171 F.R.D. at 130 (internal quotations and citations omitted). This "reasonableness" is measured by balancing the risks associated with proceeding with the litigation against the potential rewards. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *see also In re AOL Time Warner Shareholder Deriv. Litig.*, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ("although the underlying complaints allege substantial overstatements,

lost business opportunities, regulatory settlements and fines, and a staggering loss of goodwill,

the benefits incorporated into the Settlement are reasonable in light of the substantial difficulties

that would frustrate a potential trial recovery"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp.

2d 358, 364 (S.D.N.Y. 2002) (finding that, despite plaintiffs' belief that there was substantial

evidentiary support for their claims, "the complexities and uncertainties of this litigation

nevertheless warrant the approval of the Settlement").  In the process of assessing a settlement, a

court must also consider that

> [t]he fact that a proposed settlement may only amount to a fraction
> of the potential recovery does not, in and of itself, mean that the
> proposed settlement is grossly inadequate and should be
> disapproved. … In fact there is no reason, at least in theory, why a
> satisfactory settlement could not amount to a hundredth or even a
> thousandth part of a single percent of the potential recovery.

*Id*. at 455 & n.2.  *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261,

at *5 (S.D.N.Y. May 14, 2004) (after assessing risks of going forward with the litigation, court

approved proposed settlement because it "provides for payment to Class members now, not some

speculative payment of a hypothetically larger amount years down the road"); *In re Michael

Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66-67 (S.D.N.Y. 1993) (proposed settlement was

reasonable even though exact value of settlement undetermined because litigating the claims

would "severely erode the assets available" for later recovery).

   Several courts have found that, for cases involving consumer fraud claims, the balance of

factors weighs especially heavily in favor of settlement.  *See, e.g., F.C.V., Inc. v. Sterling Nat.

Bank, 2006 WL 1319822*, at *6 (D.N.J. 2006) (approving settlement of statutory consumer fraud

class action because, *inter alia*, plaintiffs will have the burdensome task of establishing both

proximate causation and damages); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294

(E.D.Pa. 2003); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993)

(holding settlement amount reasonable in light of fact that "[c]ontinued litigation of this action would involve the determination of complex issues of causation and culpability").

Here, while Plaintiffs believe they have a strong case, they also recognize that there are potential risks associated with proceeding with this litigation that make the settlement not only reasonable, but highly favorable to the settlement class. Plaintiffs have identified at least three risk factors that they believe militate in favor of a settlement.

First, plaintiffs' counsel were well aware that Defendants would likely move to dismiss the AMLP Actions. In fact, at the hearing before the JPML, Judge Motz specifically inquired of counsel for Random House whether a motion to dismiss would be filed. *See In re "A Million Little Pieces" Litigation*, 5/26/2006 Hearing Before the JPML at 3, a true and correct copy of the transcript is attached to Smith Declaration as Exhibit "D." Judge Motz also suggested that, once the motion was filed, there might be no actions left to consolidate. *Id.* (In response to a comment regarding discovery that will be necessary if the actions get past a motion to dismiss stage, Judge Motz stated "If you get beyond it. I assume [Defendants] intend to file a motion.").

Plaintiffs have also reviewed the relevant case law, and while they believe they could survive the motion to dismiss, the outcome is hardly certain. At least one court has held that the type of speech made in the Book here is protected by the First Amendment, and cannot form the basis of fraud claims. *See Lacoff v. Buena Vista Publishing, Inc.*, 705 N.Y.S.2d 183, 190-92 (2000). Another court dismissed a similar consumer fraud class action, involving alleged misrepresentations about the identity of a book's author, finding that the plaintiff's allegation that the class "would not have purchased the novel had they known [the truth]" was not a legally cognizable injury. *Rice v. Penguin Putnam, Inc.*, 734 N.Y.S.2d 98, 99-100 (2001). Finally, with respect to Plaintiffs' claims against Random House – the only real deep pocket in this litigation –

many cases hold that publishers "have no duty to investigate the accuracy of the contents of the book they published." *Id*. at 192; *see also Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 (9th Cir. 1991); *First Equity Corp. of Florida v. Standard & Poor's Corp.*, 869 F.2d 175, 179-80 (2d Cir. 1989). Even if Plaintiffs survived dismissal, Plaintiffs will likely face these same issues at the summary judgment stage, and again, the outcome is uncertain.

Second, while Plaintiffs believe class certification is appropriate for these claims, there is uncertainty as to whether a class could be certified on a contested basis. Again, both Defendants and the JMPL judges questioned whether a contested class could be certified. To successfully litigate their claims, a court might conclude that each individual Class member would potentially be required to demonstrate both that they actually relied upon representations that the Book was nonfiction, and that those representations affected their decision to buy the Book. Because each Plaintiff's assessment of the Book's value as a work with embellishments will invariably differ, this Court could conclude that the claims are too individualized. Obviously, attempting to depose each individual Class member to assess these issues of causation and damages would be both expensive and time-consuming. *See, e.g., In re Metropolitan Life Deriv. Litig.*, 935 F. Supp. 286, 293-94 (S.D.N.Y. 1996) (finding that the need to depose 23 deponents located all over the country was sufficiently burdensome to support reaching a settlement). At the hearing before the JPML, Judge Motz alluded to these problems and cast doubt on the chances for certification of a class, noting that the plaintiffs' claims will necessarily "depend upon depositions of each individual plaintiff as to whether or not … they really … thought they were buying the work of nonfiction," and whether "as a work of fiction, [the Books] still have some value." *See* Smith Declaration Exhibit "D" at 7.

Third, while Plaintiffs will vigorously prosecute this action if the settlement is not approved, the fact remains that proceeding with the litigation is burdensome and time-consuming to all parties, and the ultimate outcome is far from clear. Under these circumstances, obtaining a reasonable and favorable resolution of the action is plainly in the class's best interests.

Moreover, the amount of the settlement fund itself is generous, especially in light of the uncertainties in the litigation described above and the damage suffered by class members. Even assuming the value of the Book was diminished by the fact that certain portions were not true, the value may not be reduced to zero (as a practice, books classified as fiction do not generally sell for a lower price than nonfiction books). Also, because participating class members are not required to return the Book in order to obtain a refund, they will also retain any benefits that they may have received from reading and owning the Book. In sum, Plaintiffs believe that the Settlement provides a good recovery for the Settlement Class.

**D.      The Settlement Class Meets The Standards for Certification Under Rule 23.**

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. The Second Circuit has recognized that "[t]emporary settlement classes have proved to be quite useful in resolving major class action disputes." *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). The proposed Class should be certified as it satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3).[2] Accordingly, the Settlement Class is appropriate to be certified for these settlement proceedings.

---

[2]  As noted above, the Settlement Class is defined for settlement purposes as "all persons who purchased the Book *A Million Little Pieces* in any format on or before January 26, 2006."

13

### 1. The Numerosity Requirement Is Satisfied

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). A party does not need to prove the exact number or size of the class to satisfy this requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). A good faith estimate is sufficient. *Lovely H. v. Eggleston*, 235 F.R.D. 248, 255 (S.D.N.Y. 2006). Moreover, the number of class members necessary to sufficiently show numerosity is quite low; the Second Circuit has noted that numerosity can be presumed once a class consists of at least forty people. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The Settlement Class plainly satisfies the numerosity requirement of Rule 23(a). The Class includes all people who bought the Book (in any format) on or before January 26, 2006. Approximately 3.5 million copies were sold during that period. Smith Decl. Even assuming that some consumers may have bought multiple copies of the Book, the number of potential Class members will still number in the millions. *See, e.g., In re Natural Gas Commodities Litigation*, 231 F.R.D. 171, 179 (S.D.N.Y. 2005) (finding numerosity where "there are likely thousands or even tens of thousands of potential members of the putative class").

### 2. The Proposed Settlement Class Share Common Questions of Law and Fact, Satisfying Both the Commonality and Typicality Requirements.

The commonality requirement of Rule 23(a)(2) and typicality requirement of Rule 23 (a)(3) are discussed herein together because courts treat them as closely linked and evaluate them on much the same basis. *See, e.g., In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998) ("The concepts of commonality and typicality are broadly defined and tend to merge."). The threshold for satisfying these two requirements is not high.

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, at 548 n.2 (5th Cir. 2003); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

The commonality inquiry "asks if the named plaintiffs' 'grievances share a common question of law or of fact' with those of the proposed class…" *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *Marisol A. v. Giuliani*, 126 F. 3d 372, 376 (2d Cir. 1997)). *See also, In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004).

Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001); *see also In re Blech Sec. Litig.*, 187 F.R.D. 97, 104 (S.D.N.Y. 1999) (plaintiff alleging common course of conduct arising out of single set of operative facts satisfies commonality requirement). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *see also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001); Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to ensure that the named plaintiffs will fairly represent and pursue the claims of all the class members, rather than merely their own. *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) ("Rule 23 requires that a class representative have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions") (internal quotation and citation omitted).

a.    <u>Commonality is satisfied.</u>

As was recognized by the JPML in its decision to consolidate the AMLP Actions for pretrial proceedings, all of the Settlement Class members' claims arise out of common questions of facts, including "i) that the book contained material fabrications, and ii) that advertisements and marketing concerning the book were false and misleading inasmuch as the book was marketed as a work of nonfiction." *In re "A Million Little Pieces" Litig.*, 435 F. Supp. 2d at 137-38**.**  The Settlement Class members also share common legal theories, including nearly identical allegations of negligence and fraud.  Because of these common issues, the second of the certification requirements is met.

b.    <u>Typicality is satisfied.</u>

Here, the Named Plaintiffs' claims are clearly typical of the Class.  As discussed *supra*, all of the Settlement Class's claims arise out of misrepresentations that the Defendants allegedly made about the Book and are based on similar legal arguments.  The relief sought is also sufficiently typical for purposes of settlement-only certification since the alleged injuries all arise out of the same conduct.  *Amchem*, 521 U.S. at 620 (problems related to intractable management problems are not concerns when a class is being certified only for settlement purposes).  Therefore, the degree of typicality needed to certify a settlement class is met.

**3.    The Settlement Class's Interests are Adequately Represented by the Class Representatives.**

Representation is adequate under Rule 23(a)(4) if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A court must examine two issues to determine the adequacy of a class representative: (1) whether the class representatives' claims conflict with those of the class, and (2) whether class counsel is qualified and capable of conducting the litigation.  *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir

1997); *In re Global Crossing*, 225 F.R.D. at 453.  Here, none of the Class representatives has interests adverse to the Settlement Class as a whole, and counsel for the plaintiffs are qualified to represent the Class.

All of the Settlement Class members share a common goal: to seek the maximum possible recovery for alleged injuries arising out of the same set of facts.  There is no reason to doubt that the representatives will vigorously and fairly represent the Class members, and no conflicting, or potentially conflicting, interests have been raised by any party.

A court's assessment of the adequacy of class counsel focuses on whether that counsel is "qualified, experienced and generally able to conduct the proposed litigation." *Marisol A.*, 126 F.3d at 378.  Here, Settling Class Counsel all have extensive experience in complex class action litigation.  Counsel's capability and willingness to vigorously represent the interests of the Class members has already been demonstrated by their serious involvement in the extensive negotiations that led to the current Settlement Agreement.  *See* Section II(C), *supra.,* and AMLP Plaintiffs' Group's Motion for Co-Interim Counsel previously filed.  Thus, the Settling Class Counsel, like the representatives, are fully qualified to represent the Settlement Class in these proceedings, and satisfy the requirements of Rule 23(a)(4).

> **4.    Rule 23(b)(3) Is Satisfied Because The Settlement Class's Claims Involve Predominantly Common Issues and a Class Action is the Superior Means by Which to Adjudicate The Claims.**

Rule 23(b)(3) is satisfied where common questions of law or fact predominate over individual questions.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), cert. denied, 536 U.S. 917 (2002).  The Rule also requires proof that a class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  The Settlement Class here meets both of these requirements.

a.    <u>Common Legal and Factual Questions Predominate</u>.

To establish predominance, a party must establish that the issues of the class as a whole overshadow questions requiring individualized proof.  *Amchem*, 521 U.S. at 625 ("The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."); *see also DeMarco v. National Collector's Mint, Inc.*, 229 F.R.D. 73, 81 (S.D.N.Y. 2005).  "Predominance is a test readily met in certain cases alleging consumer … fraud," and has been found where the claims are all based on the same allegedly fraudulent conduct by defendants.  *Amchem*, 521 U.S. at 623; *DeMarco*, 229 F.R.D. at 81 (finding predominance where all class members alleged that the defendants failed to properly mark product as "COPY").

The Settlement Class's claims are predominantly common.  All of the allegations are based on the Defendants' alleged public misrepresentations.  The claims also involve the same alleged injuries, namely, the purchase of the Book under false pretenses.  Furthermore, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney*, 280 F.3d at 139; *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 469 (S.D.N.Y. 2005) ("On their own, individualized damage issues rarely prevent certification.").  Therefore, while the damages inquiries may be more individualized, predominance can still be established.  Plus, because the Class here is settlement-only, concerns related to potential variations in damages are not relevant.

b.    A Class Action is Superior to Other Means of Adjudicating the <u>Plaintiffs' Claims.</u>

Factors considered by courts when assessing whether a class action is superior include the class members' interest in individually controlling the prosecution of separate actions, the

extent and nature of any litigation concerning the same controversy already commenced by members of the class, the desirability of concentrating the litigation in one forum, and the possible difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *In re Visa Check/MasterMoney*, 280 F.3d at 133. All of these considerations demonstrate that a class action is the most sensible process to use here.

First, the interests of the Class members are far better served by a class action, especially in the context of a settlement. The costs of litigating individual actions would be much more expensive than the potential amount that any single plaintiff could recover, making it unlikely that any individual would even pursue litigation on their own. *See, e.g., Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) (noting that a class action is far superior where "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages"); *DeMarco*, 229 F.R.D. at 81 (finding a class action superior where "[t]he amount of money each member of the class is suing for is so small that it is unlikely that any individual would be able to maintain a lawsuit to obtain redress"). In addition, even if an action were to proceed on a individual basis, the plaintiffs would be unlikely to achieve a settlement as favorable as the one being offered here.

The second factor – the extent and nature of any currently pending litigation of the matter – also cuts in favor of certifying the Settlement Class here. The only pending actions in this matter have all been consolidated and transferred to this Court for pretrial proceedings. Prior to consolidation, no discovery had commenced in any of the actions. Thus, all of the actions are in the very early stages of litigation, and no plaintiff will be prejudiced by settlement.

As to the issue of the desirability of a specific forum, this jurisdiction is the optimal location in which to settle the Settlement Class's claims. All of the actions are currently pending

here.  Furthermore, this jurisdiction is the most convenient site for resolution of the Settlement

Class's claims for the same reasons that the Actions were transferred here for pretrial

proceedings: the publishing and individual defendants are located in New York, and most of the

relevant documents and witnesses are likely to be found here.  And, of course, simply from the

standpoint of judicial efficiency, "[t]he interests of justice will be well served by resolving the

common disputes of potential class members in one forum."  *In re NTL, Inc. Sec. Litig.*, 2006

WL 330113, at *13 (S.D.N.Y. Feb. 14, 2006).

     The final factor – the manageability of the class action – is not at issue where certification

of a settlement class is being considered.  *Amchem*, 521 U.S. at 620 ("Confronted with a request

for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the

proposal is that there be no trial.").  Because all of the certification requirements of Rule 23

applicable to settlement are satisfied, this Court should certify the Settlement Class for all

settlement proceedings.

     **E.**      **The Proposed Notice to Class Members is Adequate.**

     Federal Rule of Civil Procedure 23(c)(2) requires that class members be provided "the

best notice practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort."  An adequate notice must fairly apprise class

members of the proposed settlement terms and inform them of their options.  *Weinberger v.

Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982); *see also Mullane v. Central Hanover Bank & Trust

Co.*, 339 U.S. 306, 314 (1950).  However, whether a notice satisfies due process requirements

will vary by situation, and it is "widely recognized that for the due process standard to be met it

is not necessary that every class member receive actual notice, so long as class counsel acted

reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Courts in this Circuit require notice to provide the following information to comport with due process: (1) the nature of the litigation; (2) the general terms of the settlement; (3) where complete information can be located; and (4) the time and place of the fairness hearing so that objectors may be heard. *See Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004); H. Newberg, *Newberg on Class Actions*, § 8.34 at 8-111 (3d. ed. 1992).

The Proposed Notice here satisfies the requirements under Rule 23(c)(2) and due process.[3]  The Notice describes in clear and plain English (i) a summary of the litigation; (ii) the terms and operation of the Settlement; (iii) the nature and extent of the release; (iv) the method by which counsel fees will be determined; (v) the procedure and timing for objecting to the settlement; and (v) the date and place of the fairness hearing.  The notice will be delivered through first-class mail to every Settlement Class member whose name and address is reasonably available. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) (providing that individual notice must only be provided to "class members whose names and addresses may be ascertained through reasonable effort").  Here, that group consists only of persons who purchased the Book through the Random House website.

As to the remainder of the Settlement Class members, whose names and addresses are not known to Defendants, they will be notified of the proposed settlement through the Notice's publication in *Parade* and *USA Weekend*, two weekly supplements that are inserted into

---

[3] Plaintiffs' proposed form of Individual Notice is attached to the Settlement Agreement. *See* Smith Declaration at Exhibits "C and D" to Exhibit "A."

21

approximately 885 newspapers across the country.[4]   In formulating this notice program, the

parties' counsel engaged Rust Consulting, a well-known class action administrator who has

designed hundreds of notice plans.  Rust evaluated the unique characteristics of buyers of the

Book in order to design a notice program that would be effective in reaching class members.

In addition to the nationwide publication notice program, two of the defendants –

Random House and Big Jim Industries – as well as the Settlement Administrator will post the

Notice on their websites.  In addition, Settlement Class members have already likely become

aware of the Settlement Agreement through the media coverage that has surrounded the news of

the potential settlement.  Nationwide media sources including the Wall Street Journal, CNN.com,

and the New York Times have run articles announcing the potential settlement, including the

general terms of the agreement and the settlement amount.  The parties expect such news

coverage to continue throughout the settlement process.  *See, e.g., In re Prudential Sec. Inc. Ltd.

P'ships Litig.*, 107 F.3d 3, 9 (2d Cir. 1996) (holding that, despite not getting timely Notice

through the mail, individual could not opt-out of settlement because, *inter alia*, "the settlement

received extensive publicity in the media").  Thus, the form and proposed procedures for notice

satisfy the requirements of due process and Rule 23(c)(2).

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant this unopposed

motion, and enter the proposed Order of Preliminary Approval of Settlement, which will

provide: (1) preliminary approval of the Settlement; (2) certification of the Settlement Class; (3)

approval of the form and manner of giving notice to the Class of the Settlement; and (iv) a

---

[4] A list of the newspapers into which *Parade* and/or *USA Weekend* are inserted is attached as
Exhibit "B" to the Settlement Agreement.  *See* Smith Declaration at Exhibit "B" to Exhibit "A."

hearing date and time to consider final approval of the Settlement and related matters.

Dated:  January 4, 2007                       Respectfully submitted,

**LAW OFFICES OF THOMAS M. MULLANEY**

By:*/s/ Thomas M. Mullaney (TM4274)*
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY  10017
Telephone:    (212) 223-0800
Facsimile:    (212) 661-9860

***Liaison Counsel for Class and***
**Attorneys for Plaintiff Diane Marolda**

**BRODSKY & SMITH, LLC**
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626

***[Proposed] Co-Interim Class Counsel***
**and Attorneys for Plaintiff Michele Snow**

Larry D. Drury, Esquire (admitted *pro hac vice*)
LARRY D. DRURY, LTD.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:    (312) 346-7950
Facsimile:    (312) 346-5777

***[Proposed] Co-Interim Class Counsel***
**and Attorneys for Plaintiff Marcia Vedral**

[Additional Counsel Appear on Next Page]

John H. Alexander, Esquire
John H. Alexander & Associates, LLC
100 West Monroe, 21st Floor
Chicago, IL 60602

**Attorney for Plaintiff Marcia Vedral**

Alan S. Ripka, Esquire
Napoli Bern Ripka
115 Broadway
New York, NY 10006

**Attorney for Plaintiff Jimmy Floyd**

Thomas E. Pakenas, Esquire
Dale and Pakenas
641 Lake Street, Suite 400
Chicago, Il 60661

**Attorney for Plaintiff Pilar More**

Thomas A. Zimmerman, Jr., Esquire
Zimmerman and Associates, P.C.
100 West Monroe, Suite 1300
Chicago, IL 60603

**Attorney for Plaintiff Ann Marie Atrack**

Michael David Myers, Esquire
Myers & Company, P.L.L.C.
1809 Seventh Avenue, Suite 700
Seattle, WA 98101

**Attorney for Plaintiffs Shera Paglinawan and Wendy Shaw**

Scott C. Frost, Esquire
Statman, Harris, Siegel & Eyrich, LLC
333 West Wacker Drive, Suite 1710
Chicago, IL 60606

**Attorney for Plaintiff Jill Giles**

[Additional Counsel Appear on Next Page]

Brian C. Witter, Esquire
DiTommaso Lubin
17 West 220, 22nd Street
Oakbrook Terrace, IL 60181

**Attorneys for Plaintiff Sara Brackenrich**