UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                    )
IN RE "A MILLION LITTLE PIECES                      )   06 MD 1771 (RJH)
LITIGATION"                                         )
                                                    )
                                                    )
---------------------------------------------------------x


PLAINTIFF SARA RUBENSTEIN'S MEMORANDUM OF LAW IN
OPPOSITION TO THE "A MILLION LITTLE PIECES" GROUP'S MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF
SETTLEMENT CLASS AND APPROVAL OF NOTICE PLAN


Shalov Stone & Bonner LLP            Kalcheim Salah
James P. Bonner (JB-0629)            Mitch Kalcheim
485 Seventh Avenue, Suite 1000       2049 Century Park East, Suite 2150
New York, New York 10018             Los Angeles, California 90067
(212) 239-4340                       (310) 461-1200
(212) 239-4310 (fax)                 (310) 461-1201 (fax)


*Counsel for Plaintiff Sara Rubenstein*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.      The Proposed Notice Campaign Is Grossly
           Deficient And Constitutionally Flawed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.     Additional Elements Of The Settlement Further
           Support Denying Preliminary Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           A.     The Proof Of Purchase Required By The Settlement
                  Is Illogical And Unfair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           B.     The Reverse Attorneys' Fee Provision The
                  MLP Group Advocates Is Grossly Unfair . . . . . . . . . . . . . . . . . . . . . . . 7

           C.     The Notice Fails to Alert Class Members To The
                  Amount Of The Fees And Expenses The MLP Group
                  Will Seek For Their Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           D.     The Publication Notice Is Deficient Because It Does
                  Not Mention The Maximum Amount Of The Settlement . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiff Sara Rubenstein respectfully submits this memorandum of law in opposition to the "A Million Little Pieces Group's" (the "MLP Group") motion for preliminary approval of settlement, certification of settlement class and approval of notice plan.

## PRELIMINARY STATEMENT AND RELEVANT FACTS

Plaintiff Rubenstein has previously established that her counsel, not the MLP Group's counsel, should be selected as interim counsel for the putative Class in this action. Because Rubenstein has thoroughly briefed that issue, she will not repeat her arguments here. Nevertheless, in light of the MLP Group's efforts to terminate this litigation in a manner that ignores the most basic rights of most Class members, Plaintiff Rubenstein again requests that the Court address what counsel should be pursuing the Class's claims before considering the MLP Group's ill-advised settlement (the "Settlement"), even on a preliminary basis.

The proposed Settlement further supports Rubenstein's prior arguments that her chosen counsel would better protect the interests of the Class than the MLP Group's attorneys. The Settlement's most glaring – but by no means only – deficiency is the grossly deficient notice campaign the MLP Group would have the Court approve. As the MLP Group acknowledges, Fed. R. Civ. P. 23(c)(2) and Supreme Court precedent mandate that Class members who are identifiable are entitled to personal notice of the pendency of this action and the proposed Settlement. The MLP Group (aided and abetted by Defendants) seeks to evade that unambiguous bedrock principle of class action law by falsely assuring the Court that "the Parties cannot identify Settlement Class Members" who purchased *A Million Little Pieces* ("*MLP*") from a source other than defendant Random House's Web site. Smith Decl. Ex. A (Settlement Agreement) at p. 13 § 16.

That assertion, which was endorsed by the parties to the Settlement, is utter nonsense. A large percentage of the copies of *MLP* purchased by Class members were undoubtedly bought

from online retailers such as Amazon.com, BarnesandNoble.com, Borders.com and similar enterprises.[1] Those retailers, which closely track their customers' reading habits, could easily identify many, and probably most, Class members. Moreover, by employing minimal innovation – for example, providing notice to Internet users by email rather than U.S. mail – the Class could benefit from wider dissemination of the Notice and lower overall notice costs.

Undoubtedly, many brick-and-mortar book vendors could also provide the Class's counsel with the identities of purchasers of *MLP*. Faced with increasingly severe competition from online vendors, conventional booksellers have employed many methods – such as promoting the use of discounts available to "club" members – that would likely allow those merchants to determine which of their customers purchased *MLP*.

Thus, the MLP Group's supposed inability to identify Class members entitled to notice stems not from any difficulty associated with locating and notifying those consumers, but rather from the MLP Group's refusal to undertake the rudimentary steps necessary to identify the consumers who purchased *MLP*. The proposed notice campaign is therefore grossly inadequate, a fact that mandates the denial of the preliminary approval the MLP Group now seeks.

The patent deficiency of the MLP Group's proposed notice campaign calls into question the entire process that resulted in the Settlement, as well as the adequacy of the relief the MLP Group would have forced upon the Class. As of the beginning of last year, *MLP* had sold over 3.5 million copies. *See* Smith Decl., Ex. B at p. 1. After legal fees, expenses, and notice costs –

---

[1] Notably, the plaintiffs in one or more of these consolidated actions named Barnes & Noble entities as defendants. Moreover, the "Released Parties" pursuant to the MLP Group's proposed Settlement include multiple Barnes & Noble entities, Borders Group, Inc., and "any retail bookseller (brick and mortar or online)." Smith Decl., Ex. A at 10-11. In exchange for that broad release, the least the "Released Parties" could do is assist in identifying the members of the Class.

all of which will be deducted from the Class's recovery under the Settlement advocated by the MLP Group (*see* Smith Decl., Ex. A at pp. 6-9) – the recovery negotiated by the MLP Group will amount to less than $.50 per Class member, possibly significantly less. Undoubtedly, the MLP Group and its counsel viewed that recovery as adequate because they assumed that their notice campaign would only generate claims from a small minority of Class members. While that view is surely correct, Class members deserve far better than this lazy and cynical approach to pursuing their interests and notifying them of their legal rights.

Moreover, as discussed in detail below, the inadequate notice campaign is but one of the many deficiencies afflicting the proposed Settlement. For example, the Settlement contains an unprecedented provision that would eliminate the American rule with respect to attorneys' fees and force defrauded Class members to pay the ***Defendants'*** legal fees in certain circumstances. Any "settlement" that contains such patently unfair provisions does not merit preliminary approval by the Court.

## ARGUMENT

### I.

### THE PROPOSED NOTICE CAMPAIGN IS GROSSLY DEFICIENT AND CONSTITUTIONALLY FLAWED

The Settlement agreement demonstrates that the MLP Group resolved its claims with such haste that, before signing the agreement, the MLP Group's counsel gave no consideration to the nature of the notice to be provided to Class members. *See* Smith Decl., Ex. A at 12-13 (Settlement agreement provision stating that the scope of the notice program would be determined following the signing of the agreement, when the MLP Group lacked any leverage to guarantee an appropriate notice program). Equally as important, the notice "campaign" the MLP

Group eventually acceded to demonstrates that its members gave precious little thought to the topic of notice after signing their ill-conceived agreement.

As the MLP Group notes in its papers, Fed. R. Civ. P. 23(c)(2) mandates that "the court must direct to class members the best notice practicable under the circumstances, *including individual notice to all members who can be identified through **reasonable** effort*." (Emphasis added). *Accord, e.g., Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) ("We think the import of this language [in Rule 23(c)(2)] is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). Moreover, the Supreme Court has determined that the Due Process Clause guarantees class members who can be identified with reasonable effort individual notice of class actions brought on their behalf. *See Eisen*, 417 U.S. at 173-75 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-18 (1950)).

Ignoring these requirements, the MLP Group has undertaken no effort to identify Class members. As noted above, the many Class members who bought *MLP* on Amazon.com, BarnesandNoble.com, Borders.com and other online retailers are easily identifiable. The MLP Group simply chose not to request or subpoena the records that would identify those Class members. That slothful approach to representing the Class's interests is no substitute for the reasonable efforts to identify Class members required by Rule 23(c)(2) and the Supreme Court's decisions in cases such as *Eisen* and *Mullane*.

The MLP Group should not be heard to complain that obtaining records from third parties is somehow beyond the scope of the efforts required by Rule 23(c)(2) or *Eisen*. For one, retailers such as Barnes & Noble were named as defendants in one or more of these consolidated actions. Accordingly, those entities are not third parties at all. Furthermore, in every securities class

-4-

action, brokerages and other "shareholders of record" are ordered to distribute notice to "beneficial owners" of the relevant securities. The efforts required of brokerages in those cases are likely more extensive than the steps booksellers would have to undertake to identify Class members here. Moreover, in light of the fact that any settlement will result in rebates to the booksellers' customers, the retailers may well perceive notifying their customers of the settlement as a business opportunity, rather than a burden.

Additionally, the MLP Group cannot legitimately complain that the notice demanded by Rule 23(c)(2) and *Eisen* would cost too much here. As an initial matter, the Supreme Court emphasized in *Eisen* that Rule 23(c)(2) and Due Process dictate that the high cost of providing individual notice cannot justify failing to provide notice to those class members identifiable through the expenditure of reasonable efforts. *Eisen*, 417 U.S. at 175-76 (rejecting the argument that individual notice was not required because "the prohibitively high cost of providing individual notice to 2,250,000 class members would end this suit as a class action and effectively frustrate petitioner's attempt to vindicate the policies underlying the antitrust and securities laws").

Furthermore, this mess is one of the Defendants' making. While Defendants will no doubt assert a variety of defenses should this case be wrestled from the control of the MLP Group and actually litigated, the disclaimers now contained in *MLP's* book jacket make clear that Defendants profited by misleading consumers regarding the veracity of the "story" related in *MLP*. *See* Smith Decl., Ex. C (acknowledgments by defendants Random House and Frey concerning the falsity of the supposedly "true" events described in *MLP*).[2] Thus, there is little

---

[2] It is also apparent that Defendants profited quite handsomely from their deception. As noted above, by January 8, 2006, *MLP* had sold over 3.5 million copies. As a result, *MLP* was

(continued...)

-5-

reason to depart here from what is the norm in most consumer class actions, where defendants typically pay the costs associated with a reasonable notice program.

Moreover, this case presents an ideal opportunity to employ a moderate level of innovation designed to provide Class members with effective, low-cost notice of any settlement the parties eventually enter. Anyone utilizing basic common sense, let alone experienced counsel, should recognize that publication notice is an ineffective means for reaching most class members. *See, e.g., Eisen*, 417 U.S. at 174 n.12 ("'It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.'") (quoting *Mullane*, 339 U.S. at 315). On the other hand, a number of low-cost, high return options exist here for providing Class members with any required notice. For Class members who purchased their copies of *MLP* on the Internet, email notice would be low-cost, but far more effective than publication (or even mail) notice.

Moreover, as the exhibits submitted by the MLP Group make clear, Oprah Winfrey's television program and book club were instrumental in steering millions of consumers to *MLP*. Undoubtedly, nobody has contacted Ms. Winfrey or her associates to determine whether they would post notice of the Settlement on the book club's Web site[3] or on the Web site for the Oprah Winfrey Show.[4]

---

[2](...continued)
the second-highest selling book of 2005, ranking behind only a Harry Potter novel that may well bear a greater resemblance to reality that defendant Frey's supposed work of non-fiction. *See* Smith Decl., Ex. B at p. 1.

[3] The Oprah Winfrey book club's Web site is located at http://www.oprah.com/obc_classic /open/obc_intro.jhtml.

[4] The Oprah Winfrey Show's Web site is located at http://www2.oprah.com/index.jhtml.

In short, the MLP Group's proposed notice campaign is fundamentally flawed and ignores the requirements of due process. These critical deficiencies, even standing alone, mandate denying the MLP Group's motion for preliminary approval of the Settlement they precipitously entered without the faintest regard for the rights of absent Class members.

## II.

## ADDITIONAL ELEMENTS OF THE SETTLEMENT FURTHER SUPPORT DENYING PRELIMINARY APPROVAL

### A.  The Proof Of Purchase Required By The Settlement Is Illogical And Unfair

Section 4.c. of the Settlement agreement requires Class members to return a portion of their copies of *MLP* in order to receive any compensation. *See* Smith Decl., Ex. A at p. 6. Undoubtedly, many Class members have disposed of the book, but maintain receipts or other proof of their purchases. There is no explanation in the MLP Group's papers why such proof – which would be sufficient to establish Class members' claims at trial – should be insufficient to establish those consumers' entitlement to settlement benefits. This term of the Settlement should therefore be revised, even if the Court deems the faulted Settlement worthy of preliminary approval.

### B.  The Reverse Attorneys' Fee Provision The MLP Group Advocates Is Grossly Unfair

Section 18.e. of the Settlement agreement provides that Class members are enjoined from pursuing claims against the Defendants similar to those presented in this action. *See* Smith Decl., Ex. A at p. 15. While that term is typical, the agreement also contains a highly unusual, if not unprecedented, term requiring any Class member who "knowingly" violates that injunction to foot the Defendants' high-priced legal fees. *Id.* Given the fact-intensive nature of scienter issues, that provision could easily be exploited by Defendants to coerce consumers to drop

legitimate claims or, worse yet, result in consumers paying the legal bills of some of the nation's most expensive law firms.

Plaintiff Rubenstein's counsel has never seen a similar term in a class action settlement agreement. It is grossly unfair to consumers, and this action presents no unusual circumstances that could justify the use of the term here. Again, therefore, even if the Court decides to preliminarily approve the MLP Group's hasty and ill-considered Settlement, this term should be struck from the agreement.

### C. The Notice Fails To Alert Class Members To The Amount Of The Fees And Expenses The MLP Group Will Seek For Their Counsel

Uniformly, class action settlement notices provide class members with specific disclosures concerning the maximum amount of attorneys' fees and expenses class counsel intend to seek. The MLP Group's proposed Notice merely informs Class members that the MLP Group's counsel will seek fees. *See* Notice of Proposed Class Action Settlement (Exhibit C to Exhibit A of the Smith Decl.) at p. 4. No information is provided concerning the maximum amount of those fees. In light of the fact that the legal fees will diminish Class members' recoveries, the amount of the fees the MLP Group's counsel will seek is surely material to Class members. Once again, therefore, even if the Court preliminarily approves the deficient Settlement, the Notice should be amended to provide Class members with adequate information concerning the maximum amount of the fees and expenses the MLP Group intends to seek for its counsel.

### D. The Publication Notice Is Deficient Because It Does Not Mention The Maximum Amount Of The Settlement

Publication notices concerning class action settlements uniformly, and sensibly, state the amount of the relief to which Class members are entitled. Here, the MLP Group's publication

notice inexplicably says nothing concerning the $2.35 million upper limit on the Class's recovery. *See* Publication Notice (Exhibit D to Exhibit A of the Smith Decl.). Again, this patent deficiency of the Notice should be rectified even if the Court grants preliminary approval to the proposed Settlement.[5]

## CONCLUSION

For all of the reasons set forth above, the Court should deny preliminary approval to the proposed Settlement or, at a minimum, require the MLP Group to correct the numerous deficiencies that characterize its proposed Notice and notice campaign.

Dated: January 19, 2007

**SHALOV STONE & BONNER LLP**

By: /s/ James P. Bonner
  James P. Bonner (JB-0629)
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340
(212) 239-4310 (fax)

**KALCHEIM SALAH**
Mitch Kalcheim
2049 Century Park East
Suite 2150
Los Angeles, CA 90067
(310) 461-1200
(310) 461-1201 (fax)

---

[5] *E.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) ("Also contributing to our determination to scrutinize the attorneys' fees provisions with special care is the nature of the notice to the class with respect to fees. The class notice did not break out the amount of attorneys' fees provided for in the settlement agreement, although an alert class member could have calculated those fees from the information provided."); *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 441 (D. Md. 1998) ("Notice of the potential extent of attorneys fee awards is deemed essential because it allows class members to determine the possible influence of the fees on the settlement and to make informed decisions about their right to challenge the fee award.").

**Counsel for Plaintiff Sara Rubenstein**

**Counsel for Plaintiff Sara Rubenstein**