UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE "A MILLION LITTLE PIECES" LITIGATION

No. 06-md-1771

Hon. Richard J. Holwell

**AMLP PLAINTIFFS' GROUP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, <u>AND APPROVAL OF NOTICE PLAN</u>**

Dated: February 8, 2007

LAW OFFICES OF THOMAS M. MULLANEY
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY 10017
Telephone:    (212) 223-0800
Facsimile:    (212) 661-9860

*Liaison Counsel for Class and*
*Attorneys for Plaintiff Diane Marolda*

BRODSKY & SMITH, LLC
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626
*[Proposed] Co-Interim Class Counsel*
*and Attorneys for Plaintiff Michele Snow*

Larry D. Drury, Esquire (admitted *pro hac vice*)
LARRY D. DRURY, LTD.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:    (312) 346-7950
Facsimile:    (312) 346-5777

*[Proposed] Co-Interim Class Counsel*
*and Attorneys for Plaintiff Marcia Vedral*

[Additional Counsel Appear on Signature Line]

**TABLE OF CONTENTS**

I.    INTRODUCTION………………………………………………………………..1

II.   PERTINENT FACTUAL BACKGROUND………………………………………2

      A.   **The AMLP Group's Proposed Notice Program**……………………..2

      B.   **The Settlement Has Already Received Extensive Media
           Coverage**……………………………………………………………………3

III.  LEGAL ARGUMENT……………………………………………………………4

      A.   **The Proposed Notice Program Is Fair and Reasonable**……………………4

           1.   **The notice campaign proposed by the AMLP Group
                takes all "reasonable efforts" to identify individual class
                members**………………………………………………………….....5

                a.   Courts do not require the compilation of class lists
                     through subpoenas to third parties…………………………….5

                b.   Compilation of class lists through subpoenas to
                     third parties is speculative and most likely will
                     provide minimal results……………………………………….7

           2.   **Rubenstein's attempt to analogize notice procedures
                used in securities class action cases is misplaced**…………………8

           3.   **A rule requiring settling parties to compile a class
                list from non-settling parties would create bad
                public policy…**……………………………………………………9

      B.   **Rubenstein's Complaints About the Language of the Notice
           Are Baseless**………………………………………………………..……..10

           1.   **The settlement notice does not need to include the
                amount of the potential attorneys' fees and expenses**…..................10

           2.   **The publication notice is not required to include the
                maximum settlement amount**………………………………………..11

      C.   **Rubenstein's Objections To Two Administrative Details Of
           The Settlement Are Also Groundless**………………….......................12

           1.   **The Use of Receipts to Make Claims Is Unnecessary and
                Imprudent**………………………………………………...............12

**2.** **The Provision Concerning Knowing Violations of the Preliminary Order's Injunctive Provision is Fair** ..........13

**IV.** **CONCLUSION** ……………………………………………………..……..13

The "A Million Little Pieces" Plaintiffs' Group (hereinafter "AMLP Group") hereby submit the following reply memorandum of law in support of its motion for preliminary approval of settlement, certification of settlement class, and approval of notice plan.

## I.     INTRODUCTION

On January 4, 2007, the AMLP Group submitted a motion to this Court ("Motion") requesting preliminary approval of settlement, certification of settlement class, and approval of a notice plan. The Motion was signed by eleven plaintiffs' counsel on behalf of their respective clients and proposes a settlement between a class (the "Settlement Class") consisting of all persons who purchased the book "A Million Little Pieces" (the "Book") before January 26, 2006, and defendants Random House and James Frey. The proposed settlement provides up to $2.35 million to the Settlement Class, allows for consumers to receive up to a full refund of the amount they paid for the Book, and requires that a disclaimer be included in all future Random House printings of the Book, indicating that not all portions of the Book are factually accurate. This is an excellent settlement for the Settlement Class, and as explained in the Motion, was only achieved after an extended period of arms' length negotiations.

Plaintiff Sarah Rubenstein ("Rubenstein") – represented by counsel who are not part of the AMLP Group – now opposes the Motion ("Opposition"). Rubenstein does not challenge *any* of the basic financial terms of the settlement. Instead, Rubenstein argues that the proposed notice campaign is inadequate, and that two administrative features of the settlement are unacceptable. Rubenstein's principal complaint is that published notice is not sufficient in this case because the names of class members can be collected through subpoenas from non-settling parties. However, Rubenstein does not cite any case where a court has held that the names of unknown class members must be collected through subpoena or otherwise from non-settling

parties. Indeed, this bald assertion of required notice by Plaintiff Rubenstein is not required. As explained more fully below, each and every one of Rubenstein's objections lack merit, and this Court should grant the AMLP Group's Motion for Preliminary Approval of the Settlement in its entirety.

## II.     PERTINENT FACTUAL BACKGROUND

Rubenstein's brief claims that the AMLP Group "gave precious little thought" to the design of a notice campaign. (Opp. at 4). This is patently false. The AMLP Group spent months negotiating and fighting for a fair settlement and a reasonable notice campaign. In that process, many of the issues that Rubenstein now raises were examined. Based on a thorough analysis of all the factors at play here, the AMLP Group designed a plan that protects the Settlement Class without trampling the rights of third-parties and needlessly expending resources. The pertinent history shows that the AMLP Group carefully designed the notice program.

### A.     The AMLP Group's Proposed Notice Program

As discussed in the AMLP Group's Motion, the notice campaign included in the proposed settlement agreement is comprehensive and designed to reach as many class members as possible. The notice campaign has three components.

First, for the small number of Settlement Class member whose names and addresses are known, notice will be sent by first class mail.

Second, for the much larger number of class members whose names are not known, the parties agreed to an extensive publication notice campaign, consisting of publications in two newspaper supplements, *Parade* and *USA Weekend*, that are inserted into approximately 993

2

newspapers around the country each week. In total, these publications reach an estimated 116,057,000 readers.

Indeed, the parties did not design the notice program on their own. Well aware of the importance of the publication notice component, the parties engaged Rust Consulting ("Rust"), a well-known class action settlement administrator, along with Kinsella/Novack Communications, Inc. ("KNC"), a company that works with Rust and specializes in the design of published notices in class action settlements. *See Curriculum Vitae* of Rust and KNC, attached to Reply Declaration of Evan J. Smith as Exhibits A and B, respectively. Counsel for the parties evaluated and accepted the Rust/KNC recommendations.

Third, the Notice will be available on a number of different Internet sites, and a copy of the settlement agreement will be available on a website maintained by Rust. Rust has worked with the AMLP Group and counsel for defendants to design a dedicated website for the settlement, which will be located at www.amlpsettlement.com. That website will include both the publication and mailed notices, as well as links to all other settlement documents. *See* website template attached to Smith Reply Declaration as Exhibit C. In addition, the Notice will also be available on Random House's website,[1] and the website of James Frey's company, Big Jim Industries.

B.      **The Settlement Has Already Received Extensive Media Coverage.**

In designing the notice program, the AMLP Group anticipated that, in addition to the formal published notice, the class would receive free, advanced notice through media attention

---

[1] Since the Settlement Agreement was executed on or about January 3, 2007, Random House's website has included a message to its readers, instructing them to check back on the website for additional details once the settlement is approved and the website is finalized. *See* webpage at: www.randomhouse.biz/media/publicity/.html#pieces_update. This page's link can be found on Random House's home web page at www.randomhouse.com.

3

generated by the settlement, thus further increasing the reach of the notice campaign. This prediction proved correct. The proposed settlement has already received extensive media coverage, which has served as a significant source of preliminary information about the settlement for potential class members. Indeed, after an agreement was reached, articles regarding the settlement appeared in newspapers throughout the country. As just a few examples, outlets such as CNN.com, the New York Times and the Wall Street Journal have published articles on the settlement. *See e.g.* September 6, 2006 New York Times article, a true and correct copy of which is attached to Smith Reply Declaration as Exhibit D. The settlement also received coverage from numerous television outlets, and was widely discussed on the Internet. Indeed, a recent Google search of the terms "A Million Little Pieces" and "Settlement" returned nearly 11,600 hits, whereas the search A Million Little Pieces Settlement revealed 1,090,000 hits. *See Smith* Reply Declaration at Exhibit D.

### III.    LEGAL ARGUMENT

Rubenstein's Opposition raises two general categories of concern. First, Rubenstein complains that both the means of notice and the text of the notice itself are inadequate. Second, Rubenstein raises two small concerns with the administrative details of the settlement. Neither of these general objections has any merit.

#### A.    **The Proposed Notice Program Is Fair and Reasonable.**

Rubenstein objects to both the means by which the parties propose to give notice and the language of the notice itself. Each of these issues is addressed below.

4

### 1. The notice campaign proposed by the AMLP Group takes all "reasonable efforts" to identify individual class members.

Rubenstein argues that the proposed notice campaign fails to meet the standards set forth in *Eisen v. Carlisle & Jacequelin*, 417 U.S. 156 (1974). *Eisen* requires that individual notice be provided to "all members who can be identified through reasonable effort." 417 U.S. at 173. Rubenstein does not dispute that the names of class members are not known to the settling defendants. Instead, Rubenstein mainly claims that, in the context of this case, *Eisen's* "reasonable effort" standard requires the parties to subpoena the records of some or all of the online retailers that sold the Book in order to compile a list of class members. This argument is untenable.

#### a. Courts do not require the compilation of class lists through subpoenas to third parties.

Not surprisingly, Rubenstein fails to cite a single case that has ever required the type of name-gathering effort she demands. On the contrary, in circumstances similar to the ones here, the steps suggested by Rubenstein – i.e., issuing subpoenas to third-parties that *may* have contact information for *some* potential class members – have been deemed excessive and unreasonable. In fact, the Supreme Court has held that publication notice is sufficient for class members whose identities and locations cannot easily be uncovered. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950), a Supreme Court case heavily relied upon in *Eisen* (and cited in Rubenstein's Opposition), the Court was asked to determine whether published notice was sufficient for unknown beneficiaries of a common trust fund who "could be discovered upon investigation, [but] do not in due course of business come to knowledge of the common trustee." Recognizing the "practical difficulties and costs" of an investigation to identify those

5

beneficiaries, the Court held that such efforts would be "impracticable," and that notice by publication was accordingly reasonable. *Id*.

Other courts have likewise held that *Eisen* does not require parties to seek out the identities of unknown class members. For example, in *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 167-69 (2d Cir. 1987), the Second Circuit rejected a plaintiff's claim that all Vietnam veterans had to be individually contacted regarding a settlement related to Agent Orange exposure. Although the court acknowledged that the government likely had records identifying all 2.4 million veterans, it held that the effort required to create a comprehensive list of that information was not reasonable. *Id*. at 169. Instead, various forms of published notice, combined with the widespread publicity, were deemed sufficient to notify unidentified class members of the proposed settlement. *Id*. *See also State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971) (finding that "notice by publication was obviously the only practical alternative" for reaching consumer class members in antitrust actions against drug companies).[2]

---

[2] Courts in several other circuits have also found individualized notice unreasonable where the parties would need to take burdensome measures to collect or compile the class members' information. *See, e.g., Reppert v. Marvin Lumber & Co.*, 359 F.3d 53, 57 (1st Cir. 2004) (individual notice was only required for class members who purchased the defective product directly from the defendant manufacturer; notice by publication was sufficient for class members who purchased the product from third parties); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 696 (D. Colo. 2006) (individual notice was not reasonable in ADA class action where no accessible list of disabled Kmart customers existed, and compiling such a list would require substantial time and effort); *In re Serozone Prods. Liab. Litig.*, 231 F.R.D. 221, 231, 236 (S.D.W.Va. 2005) (due process and Rule 23 requirements were satisfied where defendant provided individual notice only to class members immediately known to it and notice by publication to all other class members); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002) (individual notice in large pharmaceutical class action was not reasonable based on the size of the class; instead, notice by publication in newspapers and magazine was the best notice practicable); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 541 (N.D. Ga. 1992) (publication notice was the best notice practicable where identifying potential individual class members would require the defendants to sift through credit reporting agency documents; such

Like the cases cited above, the efforts that would be necessary to compile a list of potential class members here are not reasonable. As an initial matter, there are scores of online retailers who sell books, and requiring the parties to gather the names of every such retailer and then subpoena them for appropriate information would take months. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 202 (D. Me. 2003) (attempt to subpoena numerous non-party retailers in connection with multidistrict discovery proceedings was unduly burdensome and eventually, *inter alia*, led the parties to settle). To the extent that this information is even available, the third-party booksellers from which Rubenstein would have the parties demand information are unlikely to have already-compiled lists with the names and addresses of customers who purchased the Book. Instead, each of these sellers would be required to create such lists, which could entail anything from asking the sellers to run a query and print out a list to the creation of completely new computer programs. And, while such a task would be expensive and time-consuming for one party to accomplish, there are dozens of "on-line" booksellers who would presumably be required to create these lists, greatly increasing the collective costs. As the courts in *In re Agent Orange,* 818 F.2d at 167-69, and elsewhere have held, requiring non-parties to sift through records to create a completely new database is simply not "reasonable."

     b.  Compilation of class lists through subpoenas to third parties is speculative and most likely will <u>provide minimal results</u>.

Furthermore, the benefits of such an undertaking are minimal and speculative at best. Even if every online purchaser of the Book could somehow be identified, the number of potential class members that will be uncovered through such a search is relatively small. Although there

---

efforts were neither "reasonable nor required by Rule 23").

is no way to know how many people purchased this particular book online, there have been studies which revealed that in 2004 on-line purchasers typically compose an estimated 11.11% of total consumers purchasing books. In other words, one out of every nine book purchases is an on-line purchase. *See* http://www.the-infoshop.com/study/mt21387_online_books.html. To impose such great burdens on non-settling entities for such little payoff makes the task even less worthwhile.[3]

### 2. Rubenstein's attempt to analogize notice procedures used in securities class action cases is misplaced.

Rubenstein suggests that the sort of name-gathering she proposes is done all the time in securities class actions, but she omits several facts that make clear that the circumstances in securities cases are different from those here. (Opp. at 4-5). Issuers of public stock are required to keep lists of the record holders of their stock. *See, e.g.,* DEL. CODE ANN. tit. 8, § 220 (2003). When a settling defendant in a securities case gives notice, it is usually only required to provide class notice to those known record holders – not to anyone else. What Rubenstein may be referring to is the fact that the record holders of stock are often brokerage firms and, as part of a settlement, they may be asked – not required – to pass on notice to beneficial owner of the stock. But Rubenstein does not cite any cases in which settling defendants in such cases were *required* by a court to compile a list of the beneficial owners. Instead, the issuers will usually instruct the record holding entities – who may have fiduciary obligations to their customers, the beneficial owners of the stock – to forward the class information to the beneficial owner. *See, e.g., Zuckerman v. Smart Choice Auto. Group, Inc.*, 2001 WL 686879, at *2 (M.D. Fla. May 3, 2001)

---

[3] While Rubenstein points out that some of the online booksellers were named as defendants in some of the underlying actions, none of them is a signatory to the settlement agreement, and thus, for purposes of notice, they are essentially equivalent to a third party. The fact that these parties are released by the settlement agreement arises out of defendants' legitimate desire, expressed repeatedly during negotiations, to ensure that they are truly "buying peace."

(requiring plaintiffs' counsel to direct "nominee owners" of stock such as brokerage firms to forward class notice information on to the beneficial owners).

Here, the parties are not required to contact third-party booksellers in an effort to compile a class list. Unlike brokerage firms and other record-holding entities, the booksellers have no fiduciary obligations to inform their customers of potential lawsuits or settlements. In addition, while brokerage firms or other third-party entities presumably have accurate information regarding the securities purchased and sold by their clients, as is discussed above, booksellers are unlikely to maintain records of exactly who purchased the Book. Finally, and perhaps most importantly, the very nature of purchasing a book is decidedly different from the securities purchases that are the subject of the litigation in the cases cited by Rubenstein. Securities purchases are inherently public actions, made pursuant to a wide range of federal regulations and subject to a myriad of reporting requirements. Purchasing a book – particularly a book dealing with the sensitive issues of drug and alcohol addition and recovery – is a different, and unquestionably more private, matter.

### 3. A rule requiring settling parties to compile a class list from non-settling parties would create bad public policy.

It comes as no surprise that Plaintiff Rubenstein cites not a single case in which a court interpreted *Eisen* or Rule 23 to require that a third-party create a "class list" of persons to whom it sold a consumer product. Interpreting Rule 23 in this manner would impose a tremendous burden on any number of parties involved in the sale of consumer goods. While requiring third-parties to provide customers' personal information may be proper where there are legitimate public safety concerns, the circumstances here simply do not warrant such measures.

9

Here, the proposed settlement agreement requires Random House to provide individual notice to persons known to have purchased the Book through its own website. It also includes a comprehensive publication and internet notice component that will broadly distribute information about the settlement. As a matter of law and logic, however, it is not reasonable to require third-party booksellers to comb their records and create additional lists, or even to further disseminate information about the settlement on their websites. Given the scope of the proposed publication notice and the media attention this settlement has already received, imposing such requirements is unnecessary under the applicable law.

**B.    Rubenstein's Complaints About the Language of the Notice Are Baseless.**

Rubenstein also raises two objections to the language of the notice, neither of which has any merit.

**1.    The settlement notice does not need to include the amount of the potential attorneys' fees and expenses.**

Rubenstein's argument that the amount of attorneys' fees and costs must be disclosed in the class notice is simply wrong. Attorneys' fees and costs are often negotiated only after a proposed settlement has been finalized. Here, the parties did not negotiate or reach any agreement on attorneys' fees, and the AMLP Group has not yet determined the amount of fees it will seek. Thus, it would be impossible to include any such information in the notice. *See Thompson v. Met. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) (where negotiations had not yet taken place regarding attorney's fees, class notice was adequate despite no information regarding proposed amount or method of determining attorneys fees). Moreover, the Court will ultimately have to approve any fee request that admittedly will come out of the settlement fund, thereby insuring that the Class is protected.

## 2. The publication notice is not required to include the maximum settlement amount.

Rubenstein's claim that the proposed notice is defective because it does not include the maximum amount of the settlement also lacks merit. Information regarding the maximum potential settlement amount is often not included in settlement notices. *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001) (holding that information regarding a class's maximum potential recovery is not required by "the notice requirements set out in F.R.C.P. 23 or due process"); *In re Warfarin*, 212 F.R.D. at 253 (same). This is particularly true with a published, summary notice of the sort contemplated here, which is only intended to explain the general terms of the proposed settlement, the options available to class members, and how interested people can get more information. *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982). Indeed, "recognizing that notices to class members can practicably contain only a limited amount of information, [numerous courts] have approved 'very general descriptions of the propose settlement.'" *Id*. (*quoting Crunin v. Inter'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975).

Here, the proposed summary publication notice includes all the relevant and necessary information. The notice provides a general description of the lawsuit and the amount that class members can recover. The notice also informs potential class members of what steps they can take either to participate in, or to opt out of, the settlement. Finally, the notice clearly states "<u>This Notice is just a summary</u>," and provides a website where class members can obtain a complete copy of the settlement agreement. Thus, there is no need to specify the maximum amount of the settlement in the summary, published notice.

### C. Rubenstein's Objections To Two Administrative Details Of The Settlement Are Also Groundless.

Rubenstein complains about two administrative features of the settlement: one concerning the means by which settlement class members can make claims, and the other concerning a provision of the proposed preliminary approval order. Both of these objections are easily dismissed.

#### 1. The use of receipts to make claims is unnecessary and imprudent.

Rubenstein argues that, as a proof of purchase, class members should be permitted to provide "receipts or other proof of their purchase." (Opp. at 7). Rubenstein does not say what would qualify as an "other proof of purchase," but claims that receipts should be permitted on the theory that "many Class members have disposed of the book." (Opp. at 7). This is absurd; class members are very likely to have kept the book. It is simply counter-intuitive that a class member would retain a receipt for a $19.95 book purchased over a year ago, yet not have a copy of the book. Thus, it is entirely reasonable to require a portion of the book as proof of purchase.

Moreover, it would be an administrative nightmare to permit the submission of receipts. During settlement negotiations defendants raised legitimate concerns about such use creating opportunities for fraudulent claims. One person could copy a receipt many times, and several persons could then submit claims based on that same receipt. The only way to police such tactics would be through a laborious comparison of all of the receipts submitted.

Moreover, allowing class members to make a claim by providing different forms of proof also increases the risk of multiple fraudulent claims by individual class members. A person could make several claims on the same book purchase by submitting the portion of the Book to support one claim, a receipt for a second claim, and an "other proof of purchase" for a third

claim. Fraudulent claims create a risk that some class members will be overcompensated at the expense of others. As a result, accepting receipts as proof of purchase – which was considered by the AMLP Group in its negotiations with defendants – should be rejected.

### 2. The provision concerning knowing violations of the preliminary order's injunctive provision is fair.

Rubenstein also complains about a provision in the proposed preliminary approval order that allows defendants to recover attorney's fees when a person *knowingly* violates the order's injunction against bringing similar claims later. (Opp. at 8). Rubenstein's characterization of this provision as an unprecedented "reverse attorneys' fees" provision is wildly off the mark. This provision is not at all unusual; it is tantamount to the familiar civil contempt remedy, permitting recovery of attorneys' fees if a class member **knowingly** (not mistakenly) violates the Court's own order which will contain an injunction against pursuit of similar claims. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 48 (1991) (noting courts' inherent power to award attorneys' fees where a litigant institutes a lawsuit in bad faith). This is a fair accommodation to defendants who are trying to obtain peace through a settlement.

## IV. CONCLUSION

For the aforementioned reasons, and in its original motion, the AMLP Group respectfully requests that the Court grant the proposed Order of Preliminary Approval of Settlement in its entirety.

Dated: February 8, 2007

Respectfully submitted,

**LAW OFFICES OF THOMAS M. MULLANEY**
By:*/s/ Thomas M. Mullaney (TM4274)*
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY  10017
Telephone:     (212) 223-0800
Facsimile:     (212) 661-9860

*Liaison Counsel for Class and*
**Attorneys for Plaintiff Diane Marolda**

**BRODSKY & SMITH, LLC**
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:     (516) 741-4977
Facsimile:     (516) 741-0626

*[Proposed] Co-Interim Class Counsel*
**and Attorneys for Plaintiff Michele Snow**

Larry D. Drury, Esquire (admitted *pro hac vice*)
LARRY D. DRURY, LTD.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:     (312) 346-7950
Facsimile:     (312) 346-5777

*[Proposed] Co-Interim Class Counsel*
**and Attorneys for Plaintiff Marcia Vedral**

John H. Alexander, Esquire
John H. Alexander & Associates, LLC
100 West Monroe, 21st Floor
Chicago, IL  60602

**Attorney for Plaintiff Marcia Vedral**

[Additional Counsel Appear on Next Page]

Alan S. Ripka, Esquire
Napoli Bern Ripka
115 Broadway
New York, NY  10006

**Attorney for Plaintiff Jimmy Floyd**

Thomas E. Pakenas, Esquire
Dale and Pakenas
641 Lake Street, Suite 400
Chicago, Il 60661

**Attorney for Plaintiff Pilar More**

Thomas A. Zimmerman, Jr., Esquire
Zimmerman and Associates, P.C.
100 West Monroe, Suite 1300
Chicago, IL  60603

**Attorney for Plaintiff Ann Marie Atrack**

Michael David Myers, Esquire
Myers & Company, P.L.L.C.
1809 Seventh Avenue, Suite 700
Seattle, WA  98101

**Attorney for Plaintiffs Shera Paglinawan and Wendy Shaw**

Scott C. Frost, Esquire
Statman, Harris, Siegel & Eyrich, LLC
333 West Wacker Drive, Suite 1710
Chicago, IL  60606

**Attorney for Plaintiff Jill Giles**

Brian C. Witter, Esquire
DiTommaso Lubin
17 West 220, 22nd Street
Oakbrook Terrace, IL 60181

**Attorneys for Plaintiff Sara Brackenrich**