UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE "A MILLION LITTLE PIECES" LITIGATION | No. 06-md-1771<br>Hon. Richard J. Holwell |

**AMLP PLAINTIFFS' GROUP'S SUPPLEMENTAL MEMORANDUM**
**REGARDING ADDITIONAL NOTICE**

Pursuant to this Court's April 6, 2007 request, the AMLP Plaintiffs' Group submits this brief regarding the feasibility of additional voluntary notice of the settlement by some of the largest book sellers in the country to on-line and in-store purchasers of the book *A Million Little Pieces* ("the Book").

## I.  BACKGROUND

At the conclusion of the April 6, 2007 preliminary approval hearing, the Court indicated that the proposed settlement presented by the AMLP Group provided – at least on a preliminary basis – appropriate relief for the proposed class. Specifically, the Court noted that:

> [H]aving reviewed the papers and listening to argument, there is no question in my mind that the amount of the settlement is, on a preliminary basis, within the range of fairness and reasonableness given the very significant legal issues and mountains that the plaintiffs would have to climb to succeed here, first on the class motion, and then on the merits. So I have no problem concluding that the amount of the settlement is within a reasonable range.

*See* Transcript 04-06-07 at 47, a true and correct copy of which is attached to the Declaration of Evan J. Smith, Esquire in Support of AMLP Plaintiffs' Group's Supplemental Memorandum Regarding Approval of Notice Plan (hereinafter "Smith Declaration") as Exhibit "A." The Court also explicitly rejected Plaintiff Sarah Rubenstein's argument that publication notice – which is a key component of the AMLP Group's proposed notice program – is ineffective. *Id.* at 47-48.

On that topic, the Court concluded that publication notice can be an "effective method of notice in many cases." *Id.* at 48.

However, the Court deferred ruling on the AMLP's Group's motion for preliminary approval at that time because the Court wanted to determine whether the parties to the settlement "have explored the feasibility of expanding the notice program to request large retailers . . . distribute notice to their customers." *Id*. Accordingly, the Court requested that the settling parties contact some of the larger retail booksellers, and provide the Court with "supplemental submissions . . . on the feasibility of retailer participation and notice." *Id*. Plaintiffs provide this pleading in accordance with Court's request.

## II.     PLAINTIFFS' INQUIRIES TO LARGE RETAILERS AND OTHERS.

Class counsel note at the outset that the issue of participation in notice programs by book sellers was an issue they considered with counsel for Defendants in connection with the development of the notice program memorialized in the Settlement Agreement. For a variety of reasons, it was determined that, even if possible in some form, it was unlikely that retailers would participate in a notice program tasking them with responsibility for tracking down and providing notice to book purchasers. *See* Smith Declaration.

Moreover, following the April 6, 2007 hearing, Class Counsel met several times to discuss proposed means of seeking assistance from large book sellers and retailers in providing supplemental notice to purchasers of AMLP. Class Counsel also discussed the substance and procedure by which Class Counsel would be contacting these entities and further conferred with Defendants in two separate conference calls. On April 12, 2007, Class Counsel sent letters via e-mail, regular mail and/or federal express to general counsel for the following four companies: Borders, Barnes & Noble, Amazon.com, and Wal-Mart/Wal-Mart.com. According to the

confirmatory discovery materials produced by Random House, Barnes & Noble and Borders were the largest purchasers of the Book directly from Random House. In addition, although not one of the top two sellers of books, Amazon.com and Wal-Mart/Wal-Mart.com, are the largest retailers of consumer products on-line and in stores. These four companies account for a sizeable percentage, though not all, of the Book's sales.

The correspondence sent to these companies asked if they would "be willing to voluntarily deliver (by e-mail or otherwise) the class notice directly to [their] customers who purchased the book." *See* Smith Declaration at Exhibits "B, C, D, and E." The letters also inquired into these entities' willingness to assist by providing alternative means of notice, including additional internet notice and/or distribution of materials at in-store locations. *Id.*

In addition, although not required by the Court's instruction, Class Counsel contacted Bill Becker, Esquire, General Counsel of Harpo Studios. Harpo Studios is the producer of the *Oprah Winfrey* show and, as the Court is aware from Plaintiff's motion for preliminary approval, the Book was a selection of the Oprah Winfrey Book Club.[1] Class Counsel first spoke to Mr. Becker by phone, and then on April 19, 2007, followed up with a letter similar to the correspondence sent to the other entities referenced above. *See* Smith Declaration at Exhibit "F." In the letter to Mr. Becker, Plaintiffs inquired whether Harpo Studios would voluntarily consider making an announcement regarding the settlement on the *Oprah Winfrey* show or posting information about the settlement on the show's website.

---

[1] Prior to reaching agreement with the Defendants, Class Counsel considered placing advertisements on the *Oprah Winfrey Show* as part a notice program given the publicity surrounding certain of the events at issue in the underlying litigation that occurred on the show in January, 2006 as described in the motion for preliminary approval. However, notice in this form was and remains impracticable as the cost of such advertisements are exceedingly high.

### III. RESPONSES TO PLAINTIFFS' INQUIRIES

All of the recipients of Class Counsel's written inquiries responded. *See* Smith Declaration at Exhibits "B, C, D, E, and F, respectively" In each response, Plaintiffs' request was denied. The responses collectively expressed a number of concerns with providing such notice, including: (1) the feasibility of identifying and notifying customers; (2) the potential invasion of customers' privacy rights; (3) the threat to the Bookseller's relationship with their customers; (4) the fear that customers would believe the they bear responsibility in the litigation; and (5) the potential cost and burden of providing such notice.

In addition, Amazon.com, Wal-Mart.com, and Borders each specifically declined Plaintiffs' request to post a notice of the settlement on their respective websites. *See* Smith Declaration at Exhibits "D, E, and B," respectively. David A. Zapolsky, Amazon.com's Vice President and Associate General Counsel, responded as follows with respect to that issue:

> Nor does Amazon.com have any interest in placing banner-style or other advertising on its website regarding the settlement. Not only would requiring such advertising unfairly deprive Amazon.com of potentially valuable advertising revenue it might otherwise earn from such placements, but, more importantly, it could again cause customers to believe that Amazon.com is somehow involved in the lawsuit or bears responsibility for misconduct relating to the publication and sale of the book in question.

*Id.* at Exhibit "D." With respect to Wal-Mart/Wal-Mart.com, their Assistant General Counsel wrote - "Given the nature of Wal-Mart operations, it would not be practical to 'place a banner-style ad' on our website, or to 'place a written notice at the check out counters' of more than 4000 stores." *Id.* at Exhibit "E." Similarly, Borders noted that attempts to notify customers at in-store locations would be an "administrative and operational burden" that would "essentially require us to educate our sellers on the circumstances surrounding the settlement so they are able to respond appropriately and knowledgably to customers' inquiries." *Id.* at Exhibit "B." Finally,

4

Harpo Studios responded by e-mail explaining that they had no interest in communicating the settlement to viewers of the *Oprah Winfrey Show*. *Id.* at Exhibit "F."

## IV. CONCLUSION

As noted, the responses to Plaintiffs' inquiry were consistent: to the (limited) extent that they have the names and addresses of their customers who purchased the Book,[2] they are strongly disinclined to directly contact these customers. Likewise, Harpo Studios refused to provide notice on the *Oprah Winfrey Show* or through its website.

While Class Counsel had certainly hoped for the possibility of some type of cooperation from these entities, Class Counsel also recognize that the reasons cited by the book sellers for refusing to provide supplemental notice of the settlement reflect a concern for the privacy interests of the very class members whom Class Counsel represent. This is not a cut and dry issue, but instead implicates a variety of competing personal and practical considerations.

The task of contacting the book sellers has not, however, resulted in failure. Rather, it has offered a very tangible benefit. The Court now has an undisputed and full record demonstrating that the notice campaign provided for in the settlement agreement is comprehensive, reasonable and fair, and is indeed the best notice practicable under the circumstances. Plaintiffs further submit that requiring additional notice or attempting to obtain customer information from these non-willing entities is not constitutionally required or permissible, nor would it significantly benefit the class. Accordingly, Plaintiffs request that their

---

[2] Plaintiffs understand that booksellers generally have no record of the names and addresses (or e-mail addresses) of customers who make in-store purchases. Instead, such information is retained only for online sales. In their reply in support of preliminary approval, the AMLP Group cited a 2004 study showing that only about 11% of books are purchased on-line. See http://www.the-infoshop.com/study/mt21387_online_books.html. Although it is impossible to know what percentage of the class bought the Book online, it is clear that only a small percentage (perhaps 10 percent) of the class would benefit from the proposed supplemental notice.

motion for preliminary approval of the settlement and notice program be granted by this Court.

Dated: April 27, 2007                               Respectfully submitted,

**LAW OFFICES OF THOMAS M. MULLANEY**
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY 10017
Telephone:     (212) 223-0800
Facsimile:     (212) 661-9860

*Liaison Counsel for Class*

**BRODSKY & SMITH, LLC**
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:     (516) 741-4977
Facsimile:     (516) 741-0626

*Co-Lead Counsel for Class*

Larry D. Drury, Esquire (admitted *pro hac vice*)
**LARRY D. DRURY, LTD.**
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:     (312) 346-7950
Facsimile:     (312) 346-5777

*Co-Lead Counsel for Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re "A Million Little Pieces Litigation" | MDL Docket No. 1771 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**PROOF OF MAILING**

I, Evan J. Smith, Esquire, am over the age of eighteen and on this 27th day of April, 2007, certify that I have filed the attached Supplemental Memorandum of Law and supporting papers via ECF system pursuant to the SDNY local rules.

Dated: April 27, 2007              */s/ Evan J. Smith, Esquire (ES3254)*
                                    Evan J. Smith, Esquire (ES3254)

7