EXHIBIT "D"

Dockets.Justia.com

LAW OFFICES
# BRODSKY & SMITH, LLC

240 MINEOLA BLVD
MINEOLA, NY 11501

516.741.4977
FAX 516.741.0626
www.brodsky-smith.com

PENNSYLVANIA OFFICE
TWO BALA PLAZA, SUITE 602
BALA CYNWYD, PA 19004
610.667.6200

CALIFORNIA OFFICE
9605 WILSHIRE BLVD, SUITE 900
BEVERLY HILLS, CA 90212
310.300.8425

NEW JERSEY OFFICE
1040 KINGS HIGHWAY NORTH, STE. 601
CHERRY HILL, NJ 08034
856.795.7250

April 12, 2007

**VIA EMAIL: DAVIDZ@AMAZON.COM**
**AND U.S. REGULAR MAIL**

David A. Zapolsky
VP & Associate General Counsel
Amazon.com, Inc.
1200 12th Avenue South, Suite 1200
Seattle, WA 98144

Re: *"A Million Little Pieces"* Litigation, 06-mdl-1771 (U.S.D.C. SDNY).

Dear Mr. Zapolsky:

    We are court appointed Class Counsel in the above referenced matter pending in the United States District Court for the Southern District of New York. We represent the class of consumers who purchased the book *A Million Little Pieces* from the date of the book's initial publication through and including January 26, 2006. As you may be aware from press reports, a classwide settlement has been reached between the Plaintiffs' Class, the publisher (Random House), and the book's author (James Frey). A motion for preliminary court approval of this settlement is currently pending before Judge Richard J. Holwell.

    As part of the preliminary approval process, the Court has been asked to approve a plan to notify class members of the settlement. We have sought approval of a notice plan that provides for (1) publication of the notice in over 900 newspapers across the country; (2) the establishment of a dedicated website (www.amlpsettlement.com) where class members can obtain information about the settlement and print claim forms; and (3) direct mailing of notice by Random House to customers who purchased the book directly from Random House's website.

    However, the Court has requested that Class Counsel inquire of some of the larger retail book sellers regarding their willingness to voluntarily provide additional notice to their customers. To assist us in advising the Court, we would like to know the answers to the following questions:

David A. Zapolsky
April 12, 2007
Page 2

1. Would your company be willing to voluntarily deliver (by e-mail or otherwise) the class notice directly to your customers who purchased the book? If not, why not?

2. Approximately what percentage of your book sales are made at your brick and mortar stores? With respect to those sales, do you have any records that would allow your company to determine who purchased the book (*i.e.* any records from any frequent buyers' program during the relevant period – prior to January 27, 2006)? Are there any restrictions on the use of this information?

3. With respect to any sales made through your online operations, do you have any records that would allow your company to determine who purchased the book? Are there any restrictions on the use of this information?

4. With respect to your online operations, do you routinely e-mail materials to your customers?

5. As an alternative to any direct notice, would your company be willing to

   a) place a banner-style ad somewhere on your website that links interested customers to our dedicated settlement website, or

   b) place a written notice at the checkout counters at each of your brick and mortar stores for a specified period of time notifying class members of the settlement.

6. With respect to any of the efforts above, would there be any cost or burden associated with your efforts? If so, please give us an estimate of the cost.

We are required to provide the Court with the results of our inquiry by April 27, 2007. Accordingly, we would appreciate a written response to this correspondence no later than April 20, 2007, if at all possible. In the interim, should you wish to speak with

David A. Zapolsky
April 12, 2007
Page 3

us regarding these issues, we remain available at your convenience. We appreciate your attention to this matter and look forward to your response.

          Very truly yours,

          BRODSKY & SMITH, LLC

          By: _____
          Evan J. Smith, Esquire
          240 Mineola Boulevard
          Mineola, NY 11501
          (516) 741-0626

          LARRY D. DRURY, LTD.

          By: _____
          Larry D. Drury, Esquire
          205 West Randolph Street, Suite 1430
          Chicago, IL 60606
          (312) 346-7950

          *Co-Lead Counsel for Class*

EJS/jf
Enclosures
cc:    Mark B. Blocker, Esquire (Counsel for Random House)
       Sidley Austin – Illinois Office (via regular mail)

       Derek J. Meyer, Esquire (Counsel for James Frey)
       McDermott Will & Emery – Illinois Office (via regular mail)

# Evan J. Smith

**From:** Evan J. Smith [esmith@brodsky-smith.com]
**Sent:** Thursday, April 12, 2007 6:14 PM
**To:** 'davidz@amazon.com'
**Cc:** 'Ldrurylaw@aol.com'; 'Andolina, Michael C.'; 'Blocker, Mark B.'; 'dmeyer@mwe.com'
**Subject:** A Million Little Pieces Class Action Litigation

Dear David,

Please see attached correspondence. Thank you for your attention.

Evan Smith


Evan J. Smith, Esquire
Brodsky & Smith, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
610.667.6200
610.667.9029 (fax)
www.brodsky-smith.com

4/12/2007



DAVID A. ZAPOLSKY
VP & ASSOCIATE GENERAL COUNSEL
LITIGATION AND REGULATORY
DIRECT DIAL: 206-266-1323
FACSIMILE:   206-266-7010
EMAIL: zapolsky@amazon.com

ADDRESS FOR COURIER DELIVERIES:
1200 - 12TH AVENUE SOUTH, SUITE 1200
SEATTLE, WA 98144-2734

April 17, 2007

**Via E-Mail and Regular Mail**

Evan J. Smith, Esq.
Brodsky & Smith, LLC
240 Mineola Blvd.
Mineola, NY 11501

Re: *"A Million Little Pieces"* Litigation, 06-mdl-1771 (U.S.D.C. SDNY)

Dear Mr. Smith:

    I am the Vice President and Associate General Counsel responsible for litigation and regulatory matters at Amazon.com. I'm writing in response to your letter of April 12, 2007 regarding the above-referenced lawsuit. Because some of your questions make no sense with respect to Amazon.com's business, I offer the following narrative response instead of attempting to address your questions piecemeal:

    Amazon.com strongly prefers not to participate in the above lawsuit in any way, whether by contacting its customers on the parties' behalf, joining the proceedings, formally or informally resisting efforts to compel disclosure of its customers' personal information or reading habits, or otherwise. As you likely know, Amazon.com is an online retailer; all sales are conducted online. In addition, Amazon.com enables thousands of third-party sellers to sell new and used products via the Amazon.com website, often in direct competition with Amazon.com's own offerings.

    Customer privacy is a core value at Amazon.com, and we go to great lengths to ensure that the information our customers entrust with Amazon.com is not improperly used or disclosed. Although Amazon.com does communicate with customers who have not opted out of such communications by email from time to time (as do the third-party sellers from whom our customers choose to make purchases), any email contact that is not initiated by Amazon.com, or the content of which is not fully approved and/or endorsed by Amazon.com, bears significant risk of confusing customers and potentially causing them to conclude that their personal information has been disclosed to third-parties without their consent, something Amazon.com promises in its Privacy Notice never to do except in limited circumstances. Even if customers did not conclude that Amazon.com had violated its Privacy Notice, an email from Amazon.com describing the lawsuit and the settlement is likely to cause customers to believe, wrongly, that Amazon.com is a defendant in the lawsuit and/or that Amazon.com committed some wrongdoing in connection with the publication or sale of the book in question. We view these as unacceptable risks of

Evan J. Smith, Esq.
April 17, 2007
Page 2

sending such an email on behalf of parties to this lawsuit, and we are therefore unwilling to bear those risks voluntarily.

Nor does Amazon.com have any interest in placing banner-style or other advertising on its website regarding the settlement. Not only would requiring such advertising unfairly deprive Amazon.com of potentially valuable advertising revenue it might otherwise earn from such placements, but, more importantly, it could again cause customers to believe that Amazon.com is somehow involved in the lawsuit or bears responsibility for misconduct relating to the publication and sale of the book in question.

Thus, in our view, forcing Amazon.com to contact its customers by email or to place a banner advertisement about the lawsuit on its website forces Amazon.com unfairly to bear the risk that its customers will lose trust in our products and services, a potential outcome that would unfairly prejudice our company, and on which it would be impossible to place a monetary value.

Notwithstanding the above, Amazon.com is always open to ideas or proposals that have a genuine potential to increase convenience or lower prices for our customers, and accordingly we would commit to review any idea that might provide such benefits to our customers with an open mind.

Thank you in advance for understanding our position. Please feel free to contact me if you have further questions.

Sincerely,

David A. Zapolsky