## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

IN RE "A MILLION LITTLE PIECES"
LITIGATION

No. 06-md-1771

Hon. Richard J. Holwell

---

## DEFENDANTS' BRIEF CONCERNING THE COURT'S INQUIRY ON CLASS NOTICE

### INTRODUCTION

At the April 6, 2007 preliminary approval hearing, the Court asked for "supplemental submissions by the parties on the feasibility of retailer participation and notice."  (Transcript of April 6 hearing, at 48) (excerpts attached as Exhibit A).  In particular, the Court asked the parties to "explore[] the feasibility of expanding the notice program to request large retailers … distribute notice to their customers."  *Id.* at 48.  Defendants Random House, Inc., Doubleday & Company, Inc., Random House V.G., Inc., James Frey, Maya Frey, and Big Jim Industries, Inc. (collectively "Defendants"), submit this response to address feasibility and related issues concerning retailer participation in the notice program.[1]  Below, Defendants address four points: (1) their role in the exploration of the feasibility of large retailer involvement in providing supplemental notice, (2) the adequacy of the current notice program, (3) the benefits of the contemplated supplemental notice, and (4) whether booksellers who are nominally "parties" to this litigation should be treated differently than non-parties.

---

[1] As counsel for Random House stated at the April 6 hearing, the motion for preliminary approval currently pending before the Court was brought by the Plaintiffs, and Defendants have taken no position with respect to this motion. *See* Transcript, at 15.

**DISCUSSION**

**I.      Defendants' Role In Exploring Feasibility.**

Over the past three weeks, Defendants have worked with Class Counsel and Liaison
Class Counsel to explore the feasibility of having large retailers voluntarily provide notice to
their customers.  Following the April 6 hearing, counsel for Defendants and appointed class
counsel held two conference calls to discuss how to best approach large retailers about providing
notice and to develop a list of questions to pose to the retailers to determine the feasibility of
their participation.  Following those meetings, Class Counsel sent a letter containing a list of
questions to four different retailers: Barnes & Noble, Borders, amazon.com, and Wal-Mart (the
"Booksellers").

The responses Class Counsel received from the booksellers are not surprising because
defendant Random House had explored this issue during the lengthy settlement negotiations with
Plaintiffs, which included discussions about many different methods by which to effectuate
notice.  During those negotiations, Random House informally contacted certain booksellers to
determine if notice could be given through them, and in particular, whether lists of customers
who purchased the book were available.  Random House learned that lists of customers largely
did not exist (for reasons explained further below), and was met with responses similar to those
that the Booksellers recently provided to Plaintiffs.  Booksellers were extremely concerned with
customers' privacy and First Amendment rights, and were reluctant to take any steps that might
jeopardize relationships with their customers.  Given Defendants' own concerns about First
Amendment rights and about privacy issues, Defendants understood at the time – and continue to
understand –  Booksellers' reluctance to become voluntarily involved in providing class notice.

As a result of both Random House's informal inquiries and the responses to the recent formal inquiry by Plaintiffs, Defendants remain convinced that the notice program the parties developed is the best practicable notice program and should be approved by this Court.

## II.     The Notice Program Already Proposed Is Comprehensive

The notice program outlined in the settlement agreement is fair and reasonable and Defendants submit that it does not need to be adjusted in any way.  It provides for direct mailing of notice to Random House customers (the only ones for whom names and addresses are known), and for comprehensive publication and Internet notice designed to reach as many class members as possible.  As the Court is aware, the parties did not design this notice program on their own. Rather, the parties engaged experienced class notice consultants, Rust Consulting and Kinsella/Novack Communications, Inc., to design this program and to administer the settlement. Kinsella is an expert in the design of publication notice programs and it was Kinsella that first proposed the notice program that Plaintiffs have proposed to the Court in their preliminary approval motion.

The class notice program was an integral part of the carefully structured settlement in this case.  As the Court correctly recognized during the April 6 hearing (and as the JPML recognized at the oral argument on the motion to consolidate these cases), if this case were litigated, Plaintiffs would face significant obstacles both with respect to the merits of their underlying claims and regarding the certification of this case as a class action.  Defendants are well aware of these obstacles, and their decision to settle this litigation was not an easy one.  Nonetheless, in an effort make sure that any person who truly believes they were misled by the marketing of the Book is compensated, Defendants agreed to settle on the carefully negotiated terms provided to the Court.

**III.    The Benefits of The Contemplated Supplemental Notice Are Minimal and Are Outweighed By Booksellers' Legitimate First Amendment and Privacy Concerns.**

As set forth in their February 8, 2007 submission to the Court regarding readers' First Amendment rights ("First Amendment Brief"), Defendants believe that the potential risks of having booksellers provide supplemental notice – whether through compulsion or through voluntary means – far outweigh any potential benefit to the class. While Defendants' First Amendment concerns are fully explained in their First Amendment Brief, Defendants wish to elaborate on two points regarding the likely benefit to the class of any supplemental notice from the Booksellers.

First, the proposed supplemental retail notice would reach only a small percentage of the putative class. At the April 6, 2007 hearing, counsel for objector Sara Rubenstein represented to the Court that, based on "my little bit of research," by contacting the Booksellers, "we could probably identify 50 percent of the [class] members." Transcript, at 35. The 50 percent figure is wildly high. Three of the four Booksellers sell books both at brick-and-mortar stores and online. For purchases made at brick-and-mortar stores, booksellers generally have no record of the names and addresses of the purchasers (or their e-mail addresses). This leaves only the online sales as a potential source of notice information,[2] and those sales account for only a small percentage of total book sales. Although there is no way to know exactly how many books were sold through each means, overall book sales statistics indicate that online sales account for only nine to eleven percent of overall book purchases. The AMLP Group cited a 2004 study in their reply in support of preliminary approval ("Plaintiffs' Reply Brief") showing that only about 11% of books are purchased on-line. *See* http://www.the-infoshop.com/study/mt21387_online_books.html. More recently, Barnes & Noble's 2006 year-

---

[2] Barnes & Noble's response indicates that it does not have any method of identifying purchasers even for sales made online.

end sales figures – which are available publicly in its annual report – indicate that on-line sales account for approximately 9.4% of its total sales. *See* www.barnesandnobleinc.com/press_releases/2007_march_5_year_end_sales.html.

Given that the proposed supplemental notice would reach only about 10% of the putative class – not 50% as objector's counsel suggested – it would provide at best an incremental benefit. Even employing the (unlikely) assumption that all available on-line sales information is up-to-date and would allow for successful communication with customers – i.e., no customer contact information had changed since the Book was purchased – only a small percentage of the putative class could possibly benefit from the proposed supplemental notice.

Second, in addition to the formal notice program, the settlement is likely to be communicated to book purchasers in a more direct and visible means than through the sort of unrequested e-mail proposed by the objectors: through stories in the press. As set forth in the First Amendment Brief and in Plaintiffs' Reply Brief, Defendants believe that the formal notice outlined in the settlement agreement has been, and will continue to be, supplemented by the substantial media coverage that has surrounded these events since January 2006. Both the lawsuits and the proposed settlement have already received significant media attention, and given the scope of the proposed notice and likelihood of additional publicity, there is no doubt that those customers who would like to take advantage of the settlement will be aware of the settlement, and will be easily able to participate.

**IV. There Is No Basis to Distinguish Obligations of the Booksellers Based On Whether They Are Parties To One of the Underlying Cases.**

At the April 6 hearing, the Court suggested that, in considering the issue of supplemental notice, there might be "a distinction between Barnes & Noble, which is a party to the litigation,

and the retailer that's not a party to the litigation." *See* Trans. at 46. The Court suggested that these groups are "probably worthy of separate analysis." *Id.* at 48.[3]

Defendants understand the premise for the Court's distinction and can envision scenarios where it would be appropriate to impose notice obligations on non-settling defendants. However, in this situation, the mere fact that Barnes & Noble and Borders each were nominally named as defendants by one Plaintiff should not mean that they assume greater class notice obligations than any "non-party" retailer. This is so for two reasons. First, the allegations against each bookseller are thin at best. In fact, there is nothing in either the *Strack* or *Brackenrich* complaints that suggests that either retailer did anything other than sell the Book. The *Strack* complaint provides no specific allegations as to Barnes & Noble, but incorrectly lists Barnes & Noble as one of the publishers that "advertised, represented, promoted and sold the Book as being a non-fictional memoir/autobiography." *See* Strack Compl. ¶ 8. The total extent of the allegations against Borders in the *Brackenrich* complaint are that Borders "plac[ed] the book among its nonfiction titles." Brackenrich Compl. ¶ 16.

Second, if this case were to continue, it seems highly unlikely that either Barnes & Noble or Borders would be named as defendants in any consolidated complaint, or if they were, that any claim against them would survive a motion to dismiss. Simply stated, there is no reasonable theory under which either of these booksellers would face liability. As such, Defendants do not believe that a different standard should be applied to these booksellers than to any other retailer that sold the Book but happened not to be named as a defendant in one of the underlying complaints.

---

[3] There are two booksellers that were named as parties in one of the underlying lawsuits. Barnes & Noble was named as a defendant in *Strack v. Frey et al.*, No. 06 C 0933, and Borders was named as a defendant in *Brackenrich v. Frey, et al.*, No. 06-CV-1021. Both of these cases were previously pending in the Northern District of Illinois.

## CONCLUSION

While Defendants understand the Court's desire to explore all options to ensure that the class receives the best notice of this settlement that is practicable, they also believe that the First Amendment and privacy rights of readers must be protected. Defendants believe that the comprehensive notice program in the settlement agreement accomplishes both of these goals.

Respectfully submitted,

By:_____s/Michael C. Andolina_____

Attorneys for Defendants Random House, Inc., Doubleday & Company, Inc., and Random House V.G., Inc.

Mark B. Blocker
Michael C. Andolina
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Of Counsel:*

Stephen G. Contopulos
Jennifer A. Ratner
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000

Dated: April 27, 2007

By:_____*Derek J. Meyer*_____

Attorneys for Defendants James Frey, Maya Frey, and Big Jim Industries, Inc.

Derek J. Meyer
Jocelyn D. Franceour
MCDERMOTT WILL & EMERY
227 West Monroe
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

# EXHIBIT A

746ZMDLM.txt

1

746zmdlm
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   IN RE: A MILLION LITTLE PIECES
3   LITIGATION
4
4
5
5                                        06 CV 669 (RJH)
6
6
7   ------------------------------x
7
8                                        April 6, 2007
8                                        10:10 a.m.
9
9   Before:
10
10              HON. HOLWELL: RICHARD J. HOLWELL,
11
11                                   District Judge
12
12                     APPEARANCES
13
13  BRODSKY & SMITH, L.L.C.
14       Attorneys for Plaintiff Snow
14  BY:  EVAN J. SMITH
15
15  LAW OFFICES OF THOMAS M. MULLANEY
16       Attorneys for Plaintiffs Cohn and Marolda
16  BY:  THOMAS M. MULLANEY
17
17  LARRY DRURY, LTD.
18       Attorneys for Plaintiff Vedral
18  BY:  LARRY DRURY
19
20  GANCEDO & NIEVES, LLP
20       Attorneys for Plaintiffs Hauenstein and Taylor
21  BY:  CHRISTOPHER W. TAYLOR (Via telephone)
22  SHALOV STONE BONNOR & ROCCO LLP
22       Attorneys for Rubenstein
23  BY:  JAMES BONNOR
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

2

746zmdlm
1   APPEARANCES: (continued)
2   SIDLEY AUSTIN, LLP
2        Attorneys for Defendants Random House and Doubleday
3        BY: MARK B. BLOCKER
3            MICHAEL ANDOLINA
4
5   MCDERMOTT WILL & EMERY
5        Attorneys for Defendant James Frey
6        BY:  DEREK J. MEYER
7
8
9

                        Page 1

746ZMDLM.txt
6     some of the very same reasons that I'm now advocating to the
7     Court.
8         So, publication, as in the cases Agent Orange that we
9     cited and Compact Disk in our reply brief, and that type of
10    notice and the Malane, that even though it may be possible that
11    you could have some type of a direct notice, in the whole
12    sphere of things, publication, as those cases indicated, was
13    the way to go, and they did not require notice.  And I suspect
14    that the number of people with agent orange, for example, were
15    more than the number of potential class members in this case.
16        Additionally, your Honor, I would like to note that
17    with respect to the settlement, I want to go back, that there's
18    a disclaimer that will be in the books that states, not all
19    portions of the book are factually accurate, which will now be
20    in the Random House books, as well as a publisher and author's
21    note which is already in there in the books.
22        We've provided for claim forms.  They can download it,
23    they can call into an 800 number.
24        I've discussed the bases why the Court, we believe,
25    should approve it.  And really the criteria at this stage is,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          14
      746zmdlm
1     of the proceeding is is it within the range of fairness and
2     reasonableness.  We believe that it is.  And, again, we weighed
3     the factors, we weighed the risk, appeals, litigation, et
4     cetera, and this is what we're advocating.
5         Lastly, your Honor, class certification.  Why should
6     this class be certified.  The elements of numerosity
7     commonality, typicality, adequacy of representation,
8     superiority, manageability, and that this is the best vehicle
9     with which to proceed with this case I believe are all here.  I
10    don't think numerosity is a dispute.
11        THE COURT:  I don't think anyone, at least for
12    settlement purposes, contests the fact that this should be a
13    class action.
14        MR. DRURY:  All right.  Then the only other matter
15    that I have, Judge, is this, and your preference of course will
16    prevail.  I can respond, and I have, in part, to the comments
17    and objections, if you will, by Mr. Bonnor and his client, or
18    preferably I could wait to hear what he has to say and then I
19    would like the opportunity to reply, if that suits the Court.
20        THE COURT:  All right.  Thank you, Mr. Drury.  I think
21    I'll first hear from the other supporters of the settlement,
22    the defendants to see if there's anything they wish to air now.
23        MR. DRURY:  Excuse me, your Honor.  I'm sorry.  I
24    would like to present --
25        THE COURT:  Yes.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                          15
      746zmdlm
1         MR. DRURY:  -- to the court, if you approve the --
2     preliminarily approve the settlement, suggested dates for
3     claims, exclusions, opt outs.  There's the notices are also
4     attached, as well as an order of preliminary approval.
5         THE COURT:  Thank you.
6         MR. DRURY:  Thank you.  Amended notice.  I'm sorry.
7         THE COURT:  Thank you.
8         Do defendants wish to add anything to the comments of
9     Mr. Drury?
10        MR. BLOCKER:  Judge, we don't wish to add anything.  I
                        Page 7

746ZMDLM.txt
11  would just point out one thing.  The motion for preliminary
12  approval is actually brought by the plaintiffs.  We have
13  actually taken no position with respect to preliminary
14  approval.  We're leaving that totally up to your Honor.
15        With respect to your question about how many
16  purchasers would get direct mail notice, it would be a small
17  fraction of the class, but that's because those are all the
18  addresses that we really have.
19        THE COURT:  Yes, I understand.
20        All right, Mr. Bonnor, would you like to address the
21  motion?
22        MR. BONNOR:  I would, your Honor.  Thank you very
23  much.  As I said, my name is Jim Bonnor.  I'm with Shalov Stone
24  Bonnor & Rocco.  We represent plaintiff Sarah Rubenstein.  With
25  my co-counsel Kalcheim firm.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                16
746zmdlm
1         My firm's here today and our client in order to
2   protect the interests of the millions of class members that Mr.
3   Drury has described, who will not receive any practical notice
4   at all of the settlement.
5         THE COURT:  Let me ask you whether you're objecting or
6   your client's objecting to the amount of the settlement.  I
7   didn't really see that in the papers, but I wanted to confirm
8   or to make explicit your client's views on the adequacy of the
9   settlement, leaving aside notice issues.
10        MR. BONNOR:  I think, your Honor, if you were to
11  approve the notice campaign in the shape that it's currently
12  in, settlement would be an adequate settlement because no one
13  is going to respond to the notice.
14        However, if we undertake an adequate notice campaign,
15  we're going to get many many class members to respond to that
16  notice and there are going to be a large number of claims.
17  They're providing for a hundred percent recovery, as Mr. Drury
18  said, on behalf of the class members, and in that circumstance
19  if you were to adopt the notice campaign, which I'll advocate
20  here today, your Honor, I think that the settlement would be
21  inadequate under those circumstances.
22        THE COURT:  All right.  Proceed.
23        MR. BONNOR:  There are two guiding principles of
24  course as to what constitutes adequate notice in class action.
25  There's Rule 23(c)(2), which says that you're supposed to give
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                17
746zmdlm
1   adequate notice what's reasonable under the circumstances.  And
2   what's reasonable under the circumstances means personal notice
3   to everybody who can be identified with reasonable efforts,
4   your Honor.  That's the exact words of the rule.
5         And in addition to that, the Supreme Court has told us
6   over and over again in Eisen and Schuts and other cases that it
7   is a constitutional right of the class members to be informed
8   personally of the terms of a settlement and their right to make
9   a claim in a settlement in the event that they can be
10  identified.
11        And the MLP group would have you think, your Honor,
12  that there was no way for them to identify who the members of
13  the class are, other than the 1,000 or less class members who
14  purchased their book directly from Random House.  But that's
15  obviously incorrect, your Honor.  That is absolutely untrue.
                            Page 8

746ZMDLM.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

746zmdlm
1   that the First Amendment would not, in all likelihood, provide
2   any protections in those circumstances.  The Court had to turn
3   to Colorado law.  And interestingly again, your Honor, in the
4   Tattered Cover case, what the Court said, again applying
5   Colorado law, was that in circumstances where we were searching
6   for a book purchaser, in circumstances where we're not really
7   interested in what the subject matter of the book is, we're
8   just interested in the identity of the person who purchased
9   that book, that in those circumstances, even under Colorado law
10  there would be very very low interest in protecting the
11  identity of that individual; that the First Amendment or the
12  privacy issues that were raised in those circumstances where
13  we're searching for the identity of a person, not the contents
14  of the book that they read, it would not be a protected
15  interest.
16          And what has the Supreme Court said about this issue?
17  There have been many cases in the Supreme Court balancing First
18  Amendment rights against the rights of litigants.
19  Interestingly, your Honor, there's certainly no case in which a
20  constitutional right, a constitutional right to due process by
21  class members, and when Congress and the Supreme Court have
22  dictated people are entitled to individual notice, no case
23  decided that in those circumstances that a First Amendment
24  right to remain private --
25          THE COURT:  You seem to be premising your argument on
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

746zmdlm
1   the assumption that individual notice is the only way, only
2   constitutional way to provide notice of a class action.  That's
3   just not the case.
4          MR. BONNOR:  But it is the case, your Honor.  In
5   circumstances where, with reasonable effort you can identify
6   the class members, Rule 23(c)(2) says absolutely, positively,
7   unequivocally that if you can identify those class members you
8   are mandatory, you have to provide them with personal notice.
9   And the Supreme Court has told us in Eisen, they've told us in
10  Schuts, that that is a due process right, it is a
11  constitutional right of the class members.  If they can be
12  identified through reasonable efforts, they are entitled to
13  personal notice in those circumstances.
14          THE COURT:  All right.
15          MR. BONNOR:  Now, the Supreme Court -- getting back to
16  the First Amendment issue -- there's a Zercher versus Stanford
17  Daily News I believe is the case.  That's a case that's
18  mentioned in the Tattered Cover case.  There the Supreme Court
19  said that when you have a search warrant, we can force a
20  journalist to provide photographic evidence that was not
21  published publicly.  That's a very important First Amendment
22  right, the right of freedom of the press.  And the Court said
23  in those circumstances, the right of the government to find out
24  the individuals who perpetrated certain violence at a
25  demonstration, outweighs the First Amendment right.  There is
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

746zmdlm
1   another case called Branzburg versus Hayes, it's a venerable
Page 11

746ZMDLM.txt

48

746zmdlm

1   suggestion, that notice can be an effective method of
2   publication, effective method of notice in many cases.
3         I have some hesitancy, however, as the parties may
4   have inferred from my questions, that the plaintiffs --
5   settling defendants and the plaintiffs have explored the
6   feasibility of expanding the notice program to request large
7   retailers, and I divide them into two categories:   Party
8   defendants, such as Barnes & Noble and non-party defendant,
9   probably worthy of separate analysis, but whether or not it's
10  feasible to request of them to distribute notice to their
11  customers.   I have no idea whether Barnes & Noble would be
12  willing to do this, what the cost would be and who would
13  shoulder the cost.   Those are all relevant factors.   As I say,
14  they probably cut differently for parties and non-party
15  retailers, and so I'm not going to rule on the motion for
16  approval of the settlement at this juncture.
17        The class certainly is an appropriate settling class,
18  but I'm going to simply defer, until I receive supplemental
19  submissions by the parties, on the feasibility of retailer
20  participation and notice.   I think it's a given that all
21  parties want broad notice that's feasible, and so there really
22  aren't conflicting goals among the parties here, including the
23  party represented by Mr. Bonnor.
24        How much time does counsel want to make a supplemental
25  submission to the Court on this issue?
              SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

49

746zmdlm

1         MR. DRURY:   Your Honor, the plaintiffs -- I don't know
2   if defendants -- 14, 21 days would be sufficient.
3         THE COURT:   All right.
4         MR. DRURY:   Either one, Judge.
5         THE COURT:   All right, 21 days it'll be.   Which brings
6   us to when, Mr. Donald?  Today is the 6th, is that right?  So
7   April 27th.   And I suggest that the settling parties meet with
8   Barnes & Noble and -- at a minimum, and see where things lie.
9   I form no views as to where I'll come out on the notice issue
10  ultimately, and have no predisposition.
11        Anything further we should address this morning,
12  counsel?
13        MR. BONNOR:   Could I just briefly, your Honor, address
14  the issue of who should be contacted.   I think that, as I said,
15  it's a very concentrated industry.   You have Barnes & Noble at
16  approximately 15 percent, you have Borders at approximately
17  14 percent.   I don't know what Amazon.com's percentage is, but
18  it's got to be fairly large, and Walmart's one of the biggest
19  book retailers, and I think at least with these four you could
20  probably cover 50 percent of the class here.   It wouldn't be
21  any more burden on these people to meet or to address this
22  issue with those four, and I think that would be very helpful
23  to the members of the class.
24        THE COURT:   All right, I'm not going to determine who
25  should contact whom.   I'm going to leave it up to the judgment
              SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

50

746zmdlm

1   of counsel for the settling parties to take a reasonable
2   approach to preparing a response to the Court's inquiry.
3         MR. MEYER:   Judge, just so I'm clear in my mind, we'll
                        Page 23

746ZMDLM.txt
```
 4   have a hearing on the 27th?
 5            THE COURT:  No.  I'm asking for a written submission
 6   by the 27th, and then I'll advise the parties after reviewing
 7   their submissions what the appropriate next step will be.
 8            MR. MEYER:  Thank you.
 9            MR. DRURY:  Your Honor, one more point.  I didn't hear
10   your Honor mention who the class representatives would be.  Mr.
11   Smith and myself are class counsel.  Do we need to -- does your
12   Honor wish to address that question now who the class -- all
13   the named plaintiffs or just the named plaintiffs for Mr. Smith
14   and myself.
15            THE COURT:  I don't think I need to resolve that.
16   Frankly, I assumed that the class representatives would be the
17   clients that the two of you represent.
18            MR. DRURY:  All right, thank you.
19            THE COURT:  Anything further, counsel?  All right,
20   we're adjourned.
21            THE DEPUTY CLERK:  All rise.
22            (Adjourned)
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Page 24

## CERTIFICATE OF SERVICE

I, Michael C. Andolina, hereby certify that I filed DEFENDANTS' BRIEF CONCERNING THE COURT'S INQUIRY ON CLASS NOTICE via the ECF system of the Southern District of New York and served copies of the foregoing papers upon the following counsel by U.S. mail this 27th day of April, 2007:

ATTORNEY FOR PLAINTIFF MICHELE SNOW:

> Evan J. Smith
> Brodsky & Smith, LLC
> 240 Mineola Blvd.
> Mineola, NY  11501
> Tel:  516-741-4977
> Fax:  610-667-9029

ATTORNEY FOR PLAINTIFF JIMMY FLOYD:

> Alan S. Ripka
> Napoli Bern Ripka
> 115 Broadway
> New York, NY  10006
> Tel:  212-267-3700

ATTORNEY FOR PLAINTIFFS JENNIFER COHN and DIANE MAROLDA:

> Thomas M. Mullaney
> Law Offices of Thomas M. Mullaney
> 708 Third Avenue, Suite 2500
> New York, NY  10017
> Tel:  212-223-0800
> Fax:  212-661-9860

ATTORNEY FOR PLAINTIFF PILAR MORE:

> Thomas E. Pakenas
> Dale & Pakenas
> 641 West Lake Street, Suite 400
> Chicago, IL  60661
> Tel:  312-258-1800
> Fax:  312-258-1804

ATTORNEY FOR PLAINTIFF ANN MARIE STRACK:

> Thomas A. Zimmerman, Jr.
> Zimmerman & Associates, P.C.
> 100 West Monroe, Suite 1300
> Chicago, IL  60603
> Tel:  312-440-0020
> Fax:  312-440-4180

ATTORNEY FOR PLAINTIFFS GARRETT HAUENSTEIN and JEAN TAYLOR:

> Christopher W. Taylor
> Gancedo & Nieves, LLP
> 144 West Colorado Boulevard
> Pasadena, CA  91105
> Tel:  626-685-9800
> Fax:  626-685-9808

ATTORNEYS FOR PLAINTIFF SARA
RUBENSTEIN:

    James P. Bonner
    Shalov Stone & Bonner LLP
    485 Seventh Avenue, Suite 1000
    New York, NY  10018
    Tel:  212-239-4340
    Fax:  212-239-4310

    Mitch Kalcheim
    Kalcheim Salah
    2049 Century Park East, Suite 2150
    Los Angeles, CA  90067
    Tel:  310-461-1200
    Fax:  310-461-1201

ATTORNEY FOR SHERA PAGLINAWAN
and WENDY SHAW:

    Michael David Myers
    Myers & Company, PLLC
    1809 Seventh Avenue, Suite 700
    Seattle, WA  98101
    Tel:  206-398-1188

ATTORNEYS FOR PLAINTIFF MARCIA
VEDRAL:

    John H. Alexander
    John H. Alexander & Associates, LLC
    100 West Monroe, 21st Floor
    Chicago, IL  60602

    Larry Drury
    Larry D. Drury, Ltd.
    205 W. Randolph Street, Suite 1430
    Chicago, IL  60606
    Tel:  312-346-7950
    Fax:  312-346-5777

ATTORNEYS FOR PLAINTIFF GREGORY
RIVARD:

    Mark S. Baumkel
    Provizer & Phillips, P.C.
    30200 Telegraph Road, Suite 200
    Bingham Farms, MI  48025
    Tel:  248-642-0444
    Fax:  248-642-6611

    E. Powell Miller
    Miller Shea, P.C.
    950 W. University Drive, Suite 300
    Rochester, MI  48301

ATTORNEYS FOR PLAINTIFF JILL GILES:

    Scott C. Frost
    Statman, Harris, Siegel & Eyrich, LLC
    333 West Wacker Drive, Suite 1710
    Chicago, IL  60606
    Tel:  312-263-1070
    Fax:  312-263-1201

    Alan J. Statman
    Statman, Harris, Siegel & Eyrich, LLC
    2900 Chemed Center
    255 E. Fifth Street
    Cincinnati, OH  45202
    Tel:  513-621-2666

ATTORNEYS FOR DEFENDANT SEAN
MCDONALD:

    Alex Giganle, General Counsel
    Penguin Group (USA) Inc.
    375 Hudson Street
    New York, NY  10014
    Tel:  212-366-2000
    Fax:  212-366-2687

ATTORNEYS FOR DEFENDANT ANCHOR
BOOKS:

> Fred B. Burnside
> Davis Wright Tremaine LLP
> 1501 4th Ave., Suite 2600
> Seattle, WA  98101
> Tel:  206-622-3150
> Fax:  206-628-7699

ATTORNEYS FOR DEFENDANT BARNES
& NOBLE:

> Brad Feuer
> General Counsel
> Barnes & Noble, Inc.
> 122 Fifth Avenue
> New York, NY  10011
> Tel:  212-633-3300
> Fax: 212-463-5683

DEFENDANT:

> Kassie Evashevski
> Brillstein Grey
> 9150 Wilshire Blvd.
> Beverly Hills, CA  90212

ATTORNEYS FOR PLAINTIFF SARA
BRACKENRICH:

> Brian C. Witter
> DiTommaso Lubin
> 17 West 220
> 22[nd] Street
> Oakbrook Terrace, IL  60181
> Tel:  630-333-0000
> Fax:  630-333-0333

s/Michael C.Andolina