# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE "A MILLION LITTLE PIECES" LITIGATION | No. 06-md-1771<br><br>Hon. Richard J. Holwell |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSELS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Dated: September 28, 2007

LAW OFFICES OF THOMAS M. MULLANEY
Thomas M. Mullaney, Esquire
708 Third Avenue, Suite 2500
New York, NY 10017
Telephone:    (212) 223-0800
Facsimile:    (212) 661-9860

***Liaison Counsel for Class***

BRODSKY & SMITH, LLC
By: *_/s Evan J. Smith, Esquire (ES3254)_*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626

***Co-Class Counsel***

Larry D. Drury, Esquire (admitted *pro hac vice*)
LARRY D. DRURY, LTD.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:    (312) 346-7950
Facsimile:    (312) 346-5777

***Co-Class Counsel***

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. iii

I.    SUMMARY OF THE ARGUMENT ......................................................... 1

II.   HISTORY AND BACKGROUD OF THE ACTION .................................. 2

III.  ARGUMENT ........................................................................................ 2

      A.    Compensation Of Counsel From The Common Fund Recovered
            For A Class Is Rooted In Both Equity And Public Policy .................... 2

      B.    The Court Should Award A Reasonable Percentage Of The
            Common Fund As Attorneys' Fees ................................................. 3

      C.    The Requested Attorneys' Fees Are Reasonable Under Either
            The Percentage-Of-The Fund Method Or The Lodestar Method ........... 4

            1.    The Percentage Method ....................................................... 4

            2.    The Lodestar Cross-Check ................................................... 5

      D.    An Analysis Of The Other Relevant Factors Confirms That
            The Requested Fee Is Reasonable ................................................. 7

            1.    The Time And Labor Expended By Counsel ............................. 7

            2.    The Risks Of Litigation ....................................................... 8

                  a.    The Contingent Nature Of Lead Counsel's Representation
                        Supports The Requested Fee ........................................ 8

                  b.    Risk Of Establishing Liability and Damages .................... 10

            3.    The Magnitude And Complexity Of The Litigation ................... 10

            4.    The Quality Of Representation ............................................. 11

            5.    The Requested Fee In Relation To The Settlement ................... 12

            6.    Public Policy Considerations ............................................... 12

      E.    The Class' Reaction To The Fee Request ....................................... 13

i

IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND
       NECESSARY TO THE PROSECTUION OF THIS ACTION ..................................... 14

V.    CONCLUSION ............................................................................................................ 15

**TABLE OF AUTHORITIES**

***Cases***

*Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) _____ 12

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). _____ 3

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) _____ 2

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992)_____ 10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) _____ 8

*FTR Consulting Group, Inc. v. Advantage Fund II, Ltd.*, No. 02 Civ. 8608 (RMB), 2005 U.S. Dist. LEXIS 20013, at *14 (S.D.N.Y. Sept. 13, 2005)_____ 4

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) _____ 2

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 24, 2005) _____ 3

*In re American Bank Note Holographics*, 127 F. Supp. 2d 418 at 432-33 (S.D.N.Y. 2001) ____ 8

*In re Ashanti Goldfields Secs. Litig.*, Civil Action No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at*14 (E.D.N.Y. Nov. 15, 2005)_____ 12

*In re Bristol-Myers Squibb Secs. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005)_____ 9

*In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) _____ 11

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)   14

*In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004) _____ 2

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)_____ 6

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399-400 (S.D.N.Y. 1999) _____ 7

*In re Van der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) _____ 5

*In re Wagner Communications*, 618 F. Supp. 735, 747-748 (S.D.N.Y. 1985)_____ 10

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) _____ 4

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) _____ 6

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*)_____ 6

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) _____ 3

*Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)_____ 4

*Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) _____ 11

*Schnall v. Annuity and Life RE (Holdings), Ltd.*, No. 02 CV 2133 (EBB), slip op. at 8-9 (D. Conn. Jan. 21, 2005) _____ 5

*Silverberg v. People's Bank*, 23 Fed. Appx. 46, 48 (2d Cir. 2001) _____ 5

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004)_____ 8

*Trustees v. Greenough*, 105 U.S. 527, 536 (1881) _____ 3

*Wal-Mart Stores, Inc. v. U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) _____ 4

**Treatises**

4 Robert Newberg, NEWBERG ON CLASS ACTIONS § 14:6 at 551 (4th ed. 2002) _____ 5

THE MANUAL FOR COMPLEX LITIGATION §14.121 (4th ed. 2004) _____ 5

Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1803 (1986)_____ 3

In connection with final approval of the Settlement in the above-captioned action (the "Action"), Court-appointed Class Counsel, the law firm of Brodsky & Smith, LLC and Larry D. Drury, Ltd., hereby respectfully move this Court for: (i) an award of attorneys' fees in the amount of one third (33.333%) of the Settlement Fund, and (ii) reimbursement of $14,800.94 in out-of-pocket expenses that Counsel incurred in successfully prosecuting the claims in this Action. Class Counsels' efforts to date have been without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

## I.    SUMMARY OF THE ARGUMENT

Through their efforts, Lead Counsel have obtained a $2.35 Million common fund for the benefit of the Class. Lead Counsel investigated this action and devoted substantial resources to pursuing a recovery for the Class. Indeed, but for this Settlement, a favorable result when viewed in light of all of the complexities of this Action, the Class would not be receiving a recovery for a number of years, if at all. Lead Counsel respectfully submits that all of the circumstances, as set forth in greater detail herein, compel the conclusion that the Settlement was the vehicle through which to maximize the Class' recovery and that Lead Counsels' application for attorneys' fees is fair and reasonable.

Furthermore, Lead Counsel respectfully submits that the fee requested is appropriate under the standards employed by courts in this district. As discussed below, Lead Counsels' application for one third of the Settlement Fund is consistent with fees awarded as a percentage of the fund by courts within the Second Circuit. Lead Counsels' fee request is also reasonable under a lodestar analysis as it actually requires the application of a very reasonable multiplier of 1.05. For the reasons set forth herein and in the supporting Declaration of Evan J. Smith, Co-

Lead Counsel respectfully submits that the attorneys' fees and expenses sought are fair and reasonable, and that the Court should award the requested amounts.

## II.    HISTORY AND BACKGROUND OF THE ACTION

Plaintiffs' Motion for Final Approval of the Settlement and its supporting documents (Doc. No. 69, 70, 71, 72, 73, 74 and 75) are an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Action, the investigation and discovery undertaken, the settlement negotiations and substance of the Settlement, as well as the risks and uncertainties presented and overcome in this Action in obtaining this Settlement.  Those pleadings and supporting documentation are incorporated by reference as though they were more fully set forth herein at length.

## III.    ARGUMENT

### A.    Compensation of Counsel from the Common Fund Recovered for a Class Is Rooted in Both Equity and Public Policy

The Supreme Court, as well as this Circuit and district courts therein, have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing 100 years of precedent); *see also In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).  The rationale for the common fund doctrine is an equitable one:  it prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Boeing*, 444 U.S. at 478);

2

*see also* Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1803 (1986)

("allowance of attorney-related costs is considered part of the historic equity power of the federal

courts").  Further, a traditional purpose of the common fund doctrine is to make "fair and just

allowances" to plaintiffs' counsel.  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369

(S.D.N.Y. 2002) (citing *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 536 (1881)).

Public policy also supports payment of fees from the common fund.  "Private actions to redress

real injuries … could not be sustained if plaintiffs' counsel were not to receive remuneration

from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley & Co.*,

No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 24, 2005) ("To

make certain that the public is represented by talented and experienced trial counsel, the

remuneration should be both fair and rewarding.").

### B.    The Court Should Award a Reasonable Percentage of the Common Fund as Attorneys' Fees

The Supreme Court has held that under the common fund doctrine, "a reasonable fee is

based upon a percentage of the fund bestowed on the class."  *Blum v. Stenson*, 465 U.S. 886, 900

n.16 (1984).[1]  The Second Circuit also awards fees based upon a percentage of the common fund

created.  *See Goldberger*, 209 F.3d at 50 (holding that either the percentage-of-the-fund method

or lodestar method may be used to determine appropriate attorneys' fees); *FTR Consulting*

*Group, Inc. v. Advantage Fund II, Ltd.*, No. 02 Civ. 8608 (RMB), 2005 U.S. Dist. LEXIS 20013,

---

[1]  Following *Blum*, the use of the percentage-of-the-fund method has been approved by every Circuit that has addressed the issue.  *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Rite Aid Sec. Litig. ("Rite Aid III")*, 396 F.3d 294, 300 (3d Cir. 2005); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

at *14 (S.D.N.Y. Sept. 13, 2005) (awarding 25% and employing percentage method with a lodestar 'cross-check').[2]

Moreover, "[t]he trend in this Circuit is toward the percentage method … which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'"  *Wal-Mart Stores, Inc. v. U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Global Crossing*, 225 F.R.D. at 446; *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *22; *Maley*, 186 F. Supp. 2d at 370 (and cases cited therein).

### C.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Regardless of which method the Court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case.  *Goldberger*, 209 F.3d at 47.  The Supreme Court has recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *see also Goldberger*, 209 F.3d at 52 ("market rates…are the ideal proxy" for reasonable compensation).

### 1.    The Percentage Method

The attorneys' fees requested by Lead Counsel in this Action – one third of the Settlement Fund - are well within the range of percentage fees awarded in the Second Circuit. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) (observing that "[t]raditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50%

---

[2]  While this Circuit encourages use of the lodestar method as a "cross check," it has acknowledged that the lodestar method on its own "proved vexing" and resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 48-49; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (noting that lodestar determination was often a "cumbersome, enervating, and often surrealistic process").

range in class actions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  *See also* THE MANUAL FOR COMPLEX

LITIGATION §14.121 (4th ed. 2004) (stating that a fee of 25% of a common fund "represents a

typical benchmark"); 4 Robert Newberg, NEWBERG ON CLASS ACTIONS § 14:6 at 551 (4th ed.

2002) ("Empirical studies show that, regardless of whether the percentage method or the lodestar

method is used, fee awards in class actions average around one-third of the recovery.").

    Moreover, ample precedent exists in this Circuit for granting fees in the amount of one

third where common funds have been created.  *See, e.g., In re Van der Moolen Holding N.V. Sec.

Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33 1/3% of  $8

million fund); *Schnall v. Annuity and Life RE (Holdings), Ltd.*, No. 02 CV 2133 (EBB), slip op.

at 8-9 (D. Conn. Jan. 21, 2005) (J. Burns) (awarding 33-1/3% of $16.5 million fund); *Maley*, 186

F.Supp. 2d at 368-69 (awarding 33-1/3% of $11.5 million fund, and noting that this amount is

"well within the range awarded by courts in this Circuit"); *Silverberg v. People's Bank*, 23 Fed.

Appx. 46, 48 (2d Cir. 2001) (affirming award of nearly 33-1/3% of $7.7 million fund).  Indeed,

the requested fee is equal to awards commonly made by courts in this Circuit.[3]

## 2.    The Lodestar Cross-Check

    To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method,

courts in the Second Circuit cross-check the "percentage fee with counsel's lodestar."

*Goldberger*, 209 F.3d at 50.  In conducting such a cross-check, the court must engage in a two-

step analysis:  first, to determine the lodestar, the court multiplies the number of hours each

---

[3]  Likewise, courts around the country commonly award attorneys' fees of 30% or more of a settlement fund.  *See, e.g., Taubenfeld v. Aon*, No. 04-3140, 2005 U.S. App. Lexis 13310 (7th Cir. July 5, 2005) (upholding award of one-third of $7.25 million settlement fund in securities class action); *In re Ravisent Techs. Inc., Sec. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361, at *1, *12 (E.D. Pa. Apr. 18, 2005) (awarding 30% of a $7 million fund as fees and acknowledging that attorney fees of 30-35% were commonly granted).  *See also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (Prof. Coffee found that in a study of 289 settlements ranging from less than $1 million to $50 million, "[t]he average attorney's fees percentage is shown as 31.71%, and the median turns out to be one-third").

attorney spent on the case by each attorney's reasonable hourly rate; and second, the court

adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and

contingent nature of the litigation, the result obtained and the quality of the attorney's work.  *See*,

*e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp*., 487 F.2d 161, 167-

69 (3d Cir. 1973), *subsequently refined in*, *Lindy Bros. Builders, Inc. v. American Radiator &*

*Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*).  Performing the

lodestar cross check here confirms that the fee requested by Lead Counsel is reasonable and

should be approved.

Lead Counsel, Liaison Counsel and Settlement Counsel have devoted, in the aggregate,

1,721.03 hours in the prosecution of this Action.[4]  Applying counsels' normal hourly rates to the

hours expended in this Action yields a lodestar amount of $743,720.09, or 31.6% of the

Settlement Fund.  As such, the request of fees in the amount of one third (33.333%) of the

Settlement Fund created, or $783,333.33, equates to an application of a very reasonable

multiplier of 1.05  *See* Evan J. Smith Declaration at ¶¶ 6-7 and Exhibits A-J thereto.

The reasonable multiplier of 1.05 is less than multipliers applied in other class action

cases in this jurisdiction and elsewhere.  *See*, *e.g.*, *Maley*, 186 F. Supp. 2d at 371 (applying  4.65

multiplier); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577,

at *27 (S.D.N.Y. Nov. 26, 2002) (discussing cases with multipliers of between 3.97 and 12 and

noting that the 2.09 multiplier applied is on the "lower end" of the range of multipliers awarded

by courts in the Second Circuit); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399-400

---

[4] Class Counsel and Liaison Counsel's lodestar and expenses reports for work performed in this litigation are
attached by way of affidavit to the Evan J. Smith Declaration in Support of Plaintiffs' Fee Petition as Exhibit "A, B,
and C," respectively, that is being filed contemporaneously herewith.  Settlement Counsels' lodestar and expense
reports as submitted to Class Counsel are attached to the Declaration of Evan J. Smith as Exhibits D-J.

(S.D.N.Y. 1999) (applying 2.5 multiplier); *Warner Communications*, 618 F. Supp. at 749 (applying 2.26 multiplier and observing that 2.26 "appears to be at the lower end of the range of multipliers used").

Lead Counsel invested substantial time, effort, and expense over the course of almost two two years and faced significant risks in prosecuting this Action to a successful completion.  The requested fee, therefore, is reasonable under both the percentage-of-the-fund and the lodestar/multiplier methods.

### D.    An Analysis of the Other Relevant Factors Confirms that the Requested Fee Is Reasonable

The Second Circuit in *Goldberger* explained that whether district courts use the percentage-of-the-fund method or the lodestar approach, they should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:  (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations.  *Goldberger, supra.* 209 F.3d at 50.  An analysis of these factors demonstrates that the fee requested by Lead Counsel is reasonable.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel have expended substantial time and effort over the course of the past 21 months, pursuing this Action on behalf of the Class.  To date, Class Counsel have devoted over 1,700 hours to this Action, resulting in a lodestar of $743,720.09.  Specifically, Counsel conducted an investigation of the claims, drafted complaints, briefed MDL proceedings, conducted extensive and hard fought negotiations over a four month period, drafted extensive settlement papers, briefed Preliminary Approval papers and competing Lead Counsel papers, reviewed confirmatory discovery, oversaw the notice and claims administration of the settlement

7

fund and briefed final approval papers.  Lead Counsel also undertook substantial informal

discovery – reviewing and analyzing two thousand pages of documents related to Defendant's

statements, sales and royalties figures - to confirm the fairness of the Settlement.  *See* Smith

Declaration at ¶¶ 2-3.

Moreover, Lead Counsel will continue to perform legal work on behalf of the Class

should the Court approve the proposed Settlement.  Additional resources will be expended

assisting Class Members with their Proof of Claim and Release forms and related inquiries and

working with the Claims Administrator to ensure the smooth progression of claims processing,

and moving the Court for a final distribution order.

### 2.    The Risks of Litigation

#### a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success.  Nor, particularly in complicated
> cases producing large recoveries, is it just to make a fee depend solely on the
> reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "[L]ittle

about litigation is risk-free, and class actions confront even more substantial risks than other

forms of litigation."  *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S.

Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *see also In re American Bank Note

Holographics*, 127 F. Supp. 2d 418 at 432-33 (S.D.N.Y. 2001) (concluding that it is "appropriate

to take this [contingent-fee] risk into account in determining the appropriate fee to award").  The

risks of the litigation is often cited as the "most important *Goldberger* factor."  *In re Bristol-*

*Myers Squibb Secs. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (citing *Goldberger*, 209 F.3d at 54).

Lead Counsel undertook all of the risks of this Action on a contingent fee basis - the risks of surviving dispositive motions, obtaining class certification, proving liability, loss causation and damages, prevailing in the "battle of the experts," litigating the Action through trial and possible appeals, and being unable to collect on a judgment – litigating this Action for years, expending many hours of work, at great expense, and never being paid.  From the outset, Lead Counsel understood that it was embarking on a complex, expensive and lengthy litigation, which would require the investment of hundreds, if not thousands, of hours of attorney time, with no guarantee of ever being compensated for the investment of such time and money.  Lead Counsel have not been compensated for any time or expenses since this Action began in January 2006. *See* Smith Declaration at ¶¶ 4-5.[5]

---

[5]  There have been numerous class actions in which plaintiff's counsel expended thousands of hours and advanced significant litigation expenses and yet received no remuneration whatsoever, despite their diligence and expertise. *See, e.g., Broderick v. PricewaterhouseCoopers LLP*, No. 04-56057, 2006 U.S. App. LEXIS 4680 (9th Cir. Feb. 23, 2006) (affirming dismissal); *AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won substantial jury verdict and motion for judgment n.o.v. was denied, but on appeal judgment was reversed and case dismissed after 11 years of litigation); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *In re Walt Disney Co. Derivative Litig.*, C.A. No. 15452, 2005 Del. Ch. LEXIS 113 (Del. Ch. Aug. 9, 2005) (defense verdict on all counts after nine years of litigation and three month bench trial); *Miller v. Thane, Int'l, Inc.*, 372 F. Supp. 2d 1198 (C.D. Cal. 2005) (defense verdict after bench trial); *In re Clarent Corp. Sec. Litig.*, No. C 01-03361 CRB (N.D. Cal. 2005) (defense verdict for Ernst & Young after four week trial);  *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG (W.D. Mo. March 23, 2005) (granting summary judgment to defendants); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs), *aff'd* 2000 U.S. App. LEXIS 31332 (2d Cir. Dec. 6, 2000); *In re Biogen Sec. Litig.*, No. 94-12177-PBS (D. Mass 1999) (jury verdict for defendants in securities class action); *In re Health Mgmt., Inc. Sec. Litig.*, No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case).

**b.      Risk of Establishing Liability and Damages**

Plaintiffs direct the Court to the Plaintiffs' Memorandum of Law regarding Plaintiffs'

risks in establishing liability and damages.  *See* Doc. 74 at pps. 16-18 which is incorporated by

reference herein as though more fully set forth at length.  Going forward with this case, Plaintiffs

would expect Defendants to build foundations for their defenses, and others, throughout

discovery, and to assert many of them at summary judgment and trial.  As such, this factor favors

an award of attorneys' fees and costs requested herein.

**3.      The Magnitude and Complexity of the Litigation**

The complexity of the litigation is a significant factor examined by courts evaluating the

reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache*

*Sec., Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  Here, in addition to the complex issues of

law and fact contained in consumer fraud class actions generally, this Action involves many

complex issues relating to first amendment rights given to authors and publishers of books.

Following the close of discovery, Defendants likely would have filed a motion for summary

judgment, the briefing of which would require months to complete.  If the Action were to

survive, preparation for a trial, including the filing of voluminous motions *in limine*, and a trial

itself would mean the dedication of considerable time and expenses for Lead Counsel, in

addition to significant time and attention from the Court.[6]  Moreover, successful efforts to

establish liability and damages in this Action would not end with a judgment in this Court, but

would continue through the appellate process.  *See In re Wagner Communications*, 618 F. Supp.

735, 747-748 (S.D.N.Y. 1985) ("[a]n appeal could seriously and adversely affect the scope of an

---

[6]  Also, the "normal" costs of litigation in a case such as this Action, including copying, travel, depositions, computer
and document support services are quite high.

ultimate recovery [for the class], if not the recovery itself" and citing numerous examples of reversals on appeal).

### 4. The Quality of Representation

Another factor to be considered with respect to the reasonableness of the requested fee is the quality of the representation by Lead Counsel, the standing of that counsel at the bar, and the quality of opposing counsel. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Global Crossing*, 225 F.R.D. at 467. Given the complexity of the causes of action and the presence of numerous contested issues (including liability and damages), no less than highly skilled counsel could have successfully represented the Class and obtained such a favorable recovery. Lead Counsel have many years of experience in complex federal civil litigation, particularly the litigation of consumer, securities and other class actions, have successfully litigated these types of actions in courts throughout the United States, and respectfully submit that their expertise and hard work helped to yield a positive result for the Class in a difficult case. *See* biography for Brodsky & Smith, LLC and Larry D. Drury, Ltd. attached to the Smith Declaration as Exhibit "A and B," respectively.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsels' work. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel); *see also Global Crossing*, 225 F.R.D. at 467. Lead Counsel faced formidable opposition from Defendants' Counsel, the prominent law firms of Sidley Austin and McDermott Will & Emery, and without the experience, skill and determination displayed by Lead Counsel during the prosecution of this Action and the intense arm's-length negotiations with Defendants, such a favorable recovery for the Class would not have been attained. Thus, this Settlement

11

represents a favorable result for the Class, one that is attributable to the diligence, determination, hard work and reputation of Lead Counsel against highly-skilled and well-respected opponents.

### 5.    The Requested Fee in Relation to the Settlement

This factor requires the Court to review the fee requested in terms of the percentage it represents of the total recovery.  As discussed in detail in §III(C)(1) above, while the percentage of fees awarded in class actions have varied substantially, courts in the Second Circuit and around the country have consistently awarded percentage fees to plaintiff's counsel that were equal to or greater than the fee requested by Lead Counsel herein.  *See generally, Rite Aid*, 146 F. Supp. 2d at 735 (noting that for settlements with a total recovery in the range of $1 to $50 million, the median fee award is one-third).  Thus, the present request for a fee of one third of the Settlement Fund is reasonable in relation to the fees typically awarded in complex class actions.

### 6.    Public Policy Considerations

"A strong public policy concern exists for rewarding firms for bringing successful litigation."  *In re Ashanti Goldfields Secs. Litig.*, Civil Action No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at*14 (E.D.N.Y. Nov. 15, 2005); *see also In re Bristol-Myers Squibb*, 361 F.Supp. 2d at 236 ("public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring class actions to protect defrauded consumers); *Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (courts must encourage private lawsuits to effectuate their purpose of protecting the public).  Lead Counsel shouldered all of the risk of committing substantial resources to the litigation of this Action, and of working long hours in a heavily contested matter, notwithstanding significant uncertainty as to whether the Action would ultimately succeed.

Here, this Settlement is providing the only monetary recovery for Class Members and is serving as a necessary consumer protection device to the class members.  Therefore, if this important public policy is to be carried out, the courts should award fees that will adequately

compensate plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of the situation. *See generally, Ressler*, 149 F.R.D. at 657 ("public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing actions and to encourage them to bring additional such actions"). Absent Lead Counsels' willingness to assume the risks set forth above, the Class would not have recovered anything, let alone the $2.35 Million obtained here for their benefit. Therefore, Lead Counsel respectfully submits that this Court should find that public policy favors the granting of the requested fees and expenses.

### E.    The Class' Reaction to the Fee Request

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit also consider the reaction of the Class to the fee request in deciding whether to award the requested fee. *See Maley*, 186 F. Supp. 2d at 374 (noting that Class' reaction to the fee and expenses application is entitled to great weight by the Court). Notice was given to the Class pursuant to the Preliminary Approval Order that Plaintiffs would be moving the Court for an award of attorneys' fees and reimbursement of out-of-pocket expenses on November 2, 2007 at the Final Approval hearing. As of the August 23, 2007, only one Class Member has commented to Class counsel and defense counsel regarding an award of attorneys' fees. *See* Memorandum of Law in Support of Final Approval (Doc. 74) at n. 4 regarding Pentz' defective objection. *See also Rite Aid III*, 396 F.3d at 305 (finding that "low level of objections is a rare phenomenon").[7]

The lone defective objector, Pentz, improperly submitted an objection to the Settlement to counsel only, and did not file same with the Court nor did her attorney enter his appearance.

---

[7] It should be noted that the lone defective objection was made by Connie Pentz, who coincidentally has the same surname as her counsel, John J. Pentz, Esquire, an attorney who is known around the country as a professional objector who makes his living by filing frivolous objections under the auspices of the self-proclaimed lawfirm name of "Class Action Fairness Group. *See A Supplement to The American Lawyer & Corporate Counsel Special Report "Litigation 2004 Plaintiff Power." See* Smith Declaration at Exhibit "K."

Moreover, Ms. Pentz' objection to Lead Counsel's fee request is general, and fails to articulate a basis on which to conclude that any request is unreasonable.  As detailed herein, Lead Counsel has devoted substantial time and resources to the investigation, prosecution and settlement of this Action, and through its efforts has obtained a substantial recovery for the Class, where all members of the Class who submitted claims will receive 100% of their recovery.  Accordingly, Lead Counsel respectfully submits that it is entitled to the requested fees and expenses.

Additionally, as set forth herein, courts recognize that in contingent fee class action litigation, where counsel expends sizable resources to obtain a recovery for an aggrieved class, and few individual class members have sufficient motivation to pursue litigation independently, public policy dictates sufficient payment to counsel to ensure the continued pursuit of recoveries for the benefit of such individuals.  *See Basic Inc. v. Levinson*, 485 U.S. at 230-31 (the federal laws are remedial in nature, and the courts must encourage private lawsuits to effectuate their purpose of protecting the public affected by those laws).  Finally, the absence of any valid, filed or meritorious objections to Lead Counsels' request for attorneys' fees from class members strongly supports the fee request.

## IV.    LEAD COUNSELS' EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

It is well established in this Circuit that "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  *See also American Bank Note*, 127 F. Supp. 2d at 433 (awarding $280,830.71 in expenses); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *29 (awarding $727,433.82 in expenses).  Here, Lead Counsel request reimbursement in the amount of $14,800.94 for out-of-pocket expenses incurred to date in connection with the

14

prosecution of this Action.  These expenses relate to photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred - which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review - are the type for which 'the paying, arms' length market' reimburses attorneys..[and] [f]or this reason, they are properly chargeable to the Settlement fund.").  Moreover, the affidavits of Lead Counsel, Liaison Counsel and Settlement Counsel submitted herewith demonstrate that the requested expenses were reasonable and appropriately incurred and warrant reimbursement.  *See* Exhibits A-J to the Smith Declaration.  Accordingly, Lead Counsel respectfully requests reimbursement for these expenses.

## V.    CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of one third (33.333%) of the Settlement Fund, $783,333.33 and reimbursement of expenses in the amount of $14,800.94.

Dated:  September 28, 2007                    Respectfully submitted,

                                             **LAW OFFICES OF THOMAS M. MULLANEY**
                                             By:*/s/ Thomas M. Mullaney (TM4274)*
                                             Thomas M. Mullaney, Esquire
                                             708 Third Avenue, Suite 2500
                                             New York, NY  10017
                                             Telephone:     (212) 223-0800
                                             Facsimile:     (212) 661-9860

                                             ***Liaison Counsel for Class***

                                             [Additional Counsel Appear on Next Page]

15

**BRODSKY & SMITH, LLC**
By: */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:     (516) 741-4977
Facsimile:      (516) 741-0626
***Co-Class Counsel***

Larry D. Drury, Esquire (admitted *pro hac vice*)
Larry D. Drury, Ltd.
205 W. Randolph Street, Suite 1430
Chicago, IL 60606
Telephone:     (312) 346-7950
Facsimile:      (312) 346-5777

***Co-Class Counsel***

John H. Alexander, Esquire
John H. Alexander & Associates, LLC
100 West Monroe, 21st Floor
Chicago, IL  60602

**Attorney for Plaintiff Marcia Vedral**

Alan S. Ripka, Esquire
Napoli Bern Ripka
115 Broadway
New York, NY  10006

**Attorney for Plaintiff Jimmy Floyd**

Thomas E. Pakenas, Esquire
Dale and Pakenas
641 Lake Street, Suite 400
Chicago, Il 60661

**Attorney for Plaintiff Pilar More**

Thomas A. Zimmerman, Jr., Esquire
Zimmerman and Associates, P.C.
100 West Monroe, Suite 1300
Chicago, IL  60603
**Attorney for Plaintiff Ann Marie Strack**

[Additional Counsel Appear on Next Page]

16

Michael David Myers, Esquire
Myers & Company, P.L.L.C.
1809 Seventh Avenue, Suite 700
Seattle, WA 98101

**Attorney for Plaintiffs Shera Paglinawan and
Wendy Shaw**

Scott C. Frost, Esquire
Statman, Harris, Siegel & Eyrich, LLC
333 West Wacker Drive, Suite 1710
Chicago, IL 60606

**Attorney for Plaintiff Jill Giles**

Brian C. Witter, Esquire
DiTommaso Lubin
17 West 220, 22nd Street
Oakbrook Terrace, IL 60181

**Attorneys for Plaintiff Sara Brackenrich**